(No. 74422.—

CYNTHIA LEONE, Appellee, v. THE CITY OF CHI-
CAGO, Appellant.

*Opinion filed July 22, 1993.*

MILLER, C.J., and BILANDIC and HEIPLE, JJ., dissenting.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon and Brian Trubitt, of counsel), for appellant.

Joseph R. Curcio, of Chicago (Jose B. Villasenor, of counsel), for appellee.

Flynn, Murphy, Ryan & Seyring, of Chicago (Richard T. Ryan, Mark F. Smolens and Richard L. Jones, of counsel), for *amicus curiae* Illinois Governmental Association of Pools.

Gary K. Laatsch, of Pavalon & Gifford, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE HARRISON delivered the opinion of the court:

Cynthia Leone brought an action against the City of Chicago to recover damages for personal injuries she sustained when struck by an automobile during the course of a traffic stop by Chicago police. A jury concluded that Leone's injuries were caused by the negligence of the police officer involved and, based on that negligence, found the City liable to her under the common law "special duty" exception to municipal immunity for injuries negligently caused by police officers while performing their official duties. Damages of $316,000 were awarded. The circuit court entered judgment on the jury's verdict and denied the City's post-trial motion. After the appellate court affirmed (235 Ill. App. 3d 595), we granted the City's petition for leave to appeal (134 Ill. 2d R. 315). We now affirm.

The facts are these. While returning home from work on the afternoon of October 19, 1983, Cynthia Leone was stopped by Chicago police officer William M. Coffey for driving with an expired license plate. The stop occurred on a two-lane street. It had been raining and the pavement was wet. Although traffic was fairly heavy, Coffey directed Leone to halt in one of the active traffic lanes. He made no attempt to have her move to a less

travelled area. Coffey then parked his police vehicle two or three feet behind her car. According to Leone, the distance between the two vehicles was only "enough room to just walk through." This was contrary to recommended police department procedure, which called for officers to leave between 8 and 15 feet between their cars and the cars they stop. In addition, Coffey failed to activate the emergency lights on top of his vehicle or to provide any other type of visual or audible warning signals as a caution to oncoming traffic.

When Coffey advised Leone of the reason for the stop, she expressed surprise and disbelief. Coffey responded by saying, "If you don't believe me, then get out and look." Leone understood this to be an order for her to exit her vehicle, which she did. She was then led by Coffey to the back of the car, between her vehicle and Coffey's, to examine the license plate. As she stood there discussing the matter with Coffey, an automobile driven by Calvin Blakely collided with the rear of Coffey's police vehicle, pushing that vehicle into Leone's legs with such force that she was thrown up against her own car. Her left knee was dislocated; her right knee broken. When her legs could no longer support her, she collapsed onto the pavement. She remained there until an ambulance transported her to the hospital, where she underwent surgery.

Leone subsequently sought recovery for her damages from Coffey's employer, the City of Chicago. As ultimately submitted to the jury, Leone's claim against the City was in two counts. Count I was premised on allegations that Coffey had conducted the traffic stop negligently, while count II asserted that his acts or omissions in effectuating the stop constituted willful and wanton conduct. The jury concluded that Coffey had not acted willfully or wantonly, but that he was guilty of negligence. It therefore returned a verdict in favor of the

City on count II, but in favor of Leone on count I. It is the viability of that negligence count which is the subject of this appeal.

The courts of this State have held as a matter of common law that municipalities are generally not liable for failure to supply police or fire protection (*Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 363), nor are they liable for injuries negligently caused by police officers or fire fighters while performing their official duties (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 509). An exception to these rules has been recognized where the municipality owes the injured party a special duty that is different from its duty to the general public. To invoke this special duty exception, the courts have held that a plaintiff must prove four elements: (1) the municipality must be uniquely aware of the particular danger or risk to which plaintiff is exposed; (2) there must be specific acts or omissions on the part of the municipality; (3) the specific acts or omissions must be affirmative or willful in nature; and (4) the injury must occur while the plaintiff is under the direct and immediate control of municipal employees or agents. *Burdinie*, 139 Ill. 2d at 507-08.

Leone's recovery against the City on her negligence claim in count I was premised on the existence of such a special duty here. The City now argues, however, that the special duty exception to municipal immunity cannot be squared with the express terms of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1—101 *et seq.* (West 1992)). That Act provides that a "[l]ocal public entity," which includes a municipality (745 ILCS 10/1—206 (West 1992)), is not liable for failure to provide adequate police protection (745 ILCS 10/4—102 (West 1992)) or for injury resulting from an act or omission of a public employee in the execution or enforcement of any law "unless such act or omission

constitutes willful and wanton conduct" (745 ILCS 10/ 2—109, 2—202 (West 1992)).

In light of this explicit statutory language, the City contends that the special duty exception can remain as a viable principle of law only by superseding the provisions of the Act. The City argues, however, that because the special duty exception is a judicially created doctrine, it cannot override the Act without offending section 4, article XIII, of the 1970 Illinois Constitution (Ill. Const. 1970, art. XIII, §4), which it construes as investing the General Assembly with exclusive authority for determining whether and under what circumstances a municipality should be immune from liability.

Without intimating any view on the merits of this argument, we note simply that it is not properly before us. At trial, the City made no challenge to the constitutional viability of the special duty exception. Its contention was simply that a special duty could not be established on the facts present here. Having tried and lost the case on this theory, the City cannot assail the circuit court's judgment on a wholly different basis on appeal. *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 148.

The City argues, in the alternative, that even if the special duty exception is constitutional, it should still be interpreted to require a showing that the misdeeds of the offending public employee were willful and wanton within the meaning of section 2—202 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/2—202 (West 1992)). The City forgets the very basic principle that what the special duty doctrine is an exception to is the rule that municipalities are immune from liability for injuries *negligently* caused by police officers or fire fighters while performing their official duties. (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 509.) It necessarily follows from this principle that when the exception is activated, liabil-

ity will be imposed for the employee's negligence. (*Anthony v. City of Chicago* (1988), 168 Ill. App. 3d 733, 736.) No higher degree of fault need be established.

We note, moreover, that section 2–202, by its terms, already eliminates municipal immunity for injury resulting from the willful and wanton acts or omissions of public employees in the enforcement or execution of the law. This is so even where no special duty is present. Incorporating a willful and wanton requirement into the special duty doctrine would therefore yield the anomalous result of making recovery more difficult under the doctrine than it already is under the statute. Under these circumstances, the doctrine would cease to operate as an "exception" to sovereign immunity and would instead become an expansion of it. This is a total subversion of the rule.

The City's final argument on appeal is that the special duty exception is inapplicable here because the evidence failed to show that Officer Coffey was "uniquely aware" of the particular danger or risk to which Leone was exposed or that Leone was under Coffey's "direct and immediate control" when she was injured. The appellate court correctly held otherwise. The requirement of "direct and immediate control" is met where the public employee "creates a position of peril ultimately injurious to a plaintiff, as opposed to situations where a plaintiff merely seeks protection from the public employee that is not normally provided. [Citation.]" (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 525.) This court has recently interpreted this to mean

> "that the control element arises when the public employee initiates the circumstances which create the dangerous situation. Thus, where a police officer or firefighter initiates the dangerous situation without any suggestion from the plaintiff, it has been held that the

plaintiff is under the control of the police or fire department." (*Burdinie*, 139 Ill. 2d at 525-26.)

As even our cursory recitation of the facts has shown, these circumstances were plainly present with Officer Coffey's traffic stop here. By directing Leone to halt in an active traffic lane in inclement weather without providing warnings to oncoming traffic, by parking so close behind her, and by then directing her to the area between his car and hers to discuss the matter, Officer Coffey placed Leone in a highly perilous position. No part of this was done at Leone's suggestion. The dangerous situation was the creation of Coffey and Coffey alone.

We likewise find no merit to the City's contention that Coffey was not, in fact, "uniquely aware" of the particular danger or risk to which he had exposed Leone. The "unique awareness" element of the special duty exception, derived from this court's decision in *Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, has been construed to mean simply that the municipality must be on notice that a preventable danger threatens a particular individual of whom it is aware. (*Fryman v. JMK/ Skewer, Inc.* (1985), 137 Ill. App. 3d 611, 617; *McGuckin v. Chicago Union Station* (1989), 191 Ill. App. 3d 982, 992.) In this case, as the appellate court correctly observed (235 Ill. App. 3d at 601), there was ample evidence that Officer Coffey fully appreciated the danger posed to Leone by conducting the stop as he did. There was also ample proof that this danger was fully avoidable. The record showed, for example, that Coffey could have directed Leone to stop somewhere other than in an active traffic lane or that he could have parked a safer distance behind her as the police training manual recommended, and it was certainly not necessary for him to carry on a discussion with Leone in the street between

their two vehicles. A parking lane and sidewalk were only a few steps away.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*

CHIEF JUSTICE MILLER, dissenting:

Like the majority, I would decide the present appeal solely on the basis of the special duty exception to the general rule of municipal nonliability in matters involving police or fire protection. Unlike the majority, however, I do not believe that the plaintiff has satisfied the requirements of that exception. Accordingly, I dissent.

As a preliminary matter, I agree with the majority that the defendant has waived its contention that the courts' continued recognition of the special duty exception, a common law creation, cannot be reconciled with the existence of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1— 101 *et seq.* (West 1992)). As the majority opinion notes, the defendant failed to urge this particular theory in the trial court; having lost in that forum, the defendant may not now challenge the adverse judgment on a fresh ground. See *Fawcett v. Reinertsen* (1989), 131 Ill. 2d 380, 386; *Richardson v. Economy Fire & Casualty Co.* (1985), 109 Ill. 2d 41, 46-47.

To be sure, the waiver rule expresses a principle of administrative convenience, not a limitation on our jurisdiction. (See, *e.g., In re Estate of Swiecicki* (1985), 106 Ill. 2d 111, 122-23.) Yet this appeal is not the proper vehicle for an examination of the complex relationship between the Tort Immunity Act and the special duty exception. The latter doctrine has coexisted with the Act for several decades, and, at least until recently (see *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501), it was assumed that there was no inconsistency be-

tween the two. Because application of the special duty exception to the present case would not represent a departure from settled precedent (*cf. Hux v. Raben* (1967), 38 Ill. 2d 223 (litigant's waiver of issue will be overlooked when necessary to protect consistent development of law)), I see no compelling reason to consider the issue here.

Contrary to the majority's view, however, I do not believe that the plaintiff has satisfied all the requirements of the special duty exception. The evidence in this case establishes neither that the police officer was uniquely aware of the danger posed to the plaintiff, nor that the plaintiff was under the officer's "direct and immediate control" at the relevant time. Thus, the present plaintiff has not satisfied at least two of the four requirements for application of the special duty exception (see *Burdinie*, 139 Ill. 2d at 507-08 (listing requirements)), and her action against the municipality must therefore fail.

First, the plaintiff has not established that the police officer was uniquely aware of the potential dangers in this case. Although the evidence shows that the officer knew or should have known of the risks in effecting a traffic stop in the manner that occurred here, this testimony demonstrates nothing more than the officer's heightened awareness of those dangers. As *Burdinie* instructs, "Superior knowledge, in and of itself, does not create a duty." (*Burdinie*, 139 Ill. 2d at 522.) There was no evidence in the present case that the officer was aware of any particular danger threatening the plaintiff.

Moreover, the plaintiff has not shown that her injury occurred while she was under the police officer's "direct and immediate control." The plaintiff herself testified that she asked the officer whether she could inspect the license plate and that the officer granted her permission to do so. Clearly, this evidence does not sustain the con-

clusion that the officer ordered the plaintiff to leave the car. The test is an objective one: What would a reasonable person have believed at the time in question? (See *Burdinie*, 139 Ill. 2d at 526.) Notwithstanding the plaintiff's testimony that she thought that she was being ordered out of the car, the evidence in this case supports but one conclusion: that the plaintiff was not directed to get out of her car, and that, prompted by curiosity or disbelief, she exited her vehicle because she wanted to. Notably, even the plaintiff's own expert witness agreed that the plaintiff was not ordered to leave the car. In the absence of a command by the officer placing the motorist in a position of peril, one must conclude that the requisite control was lacking.

For the reasons stated, I respectfully dissent.

JUSTICE BILANDIC, also dissenting:

I respectfully dissent from the majority's decision. It is undisputed that, pursuant to the Tort Immunity Act (745 ILCS 10/1—101 *et seq.* (West 1992)) municipalities are not liable for injuries resulting from an act or omission of a police officer in the execution or enforcement of any law "unless such act or omission constitutes willful and wanton conduct" (745 ILCS 10/2—202, 2—109 (West 1992)). The jury in the instant action specifically found that Officer Coffey was not acting willfully and wantonly at the time the plaintiff sustained her injuries. The majority nevertheless concludes that the City of Chicago is liable for the injuries the plaintiff suffered as a result of Officer Coffey's ordinary negligence in enforcing traffic laws.

The majority concludes that the facts of this case fall within the judicially created "special duty" rule. Even if I assume, *arguendo*, that the majority is correct in concluding that the City waived its right to contest the validity of the "special duty" rule, I must disagree with

the majority's conclusion that the rule may be invoked under the facts of this case.

Our courts have held that the following four-prong test must be satisfied before plaintiffs may invoke the "special duty" doctrine:

> " '(1) the municipality must be uniquely aware of the particular danger or risk to which the plaintiff is exposed [citation];
>
> (2) there must be allegations of specific acts or omissions on the part of the municipality [citation];
>
> (3) the specific acts or omissions *** must be either affirmative or wilful in nature [citation]; and
>
> (4) the injury must occur while the plaintiff is under the direct and immediate control of employees or agents of the municipality [citation].' " (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 508, quoting *Bell v. Village of Midlothian* (1980), 90 Ill. App. 3d 967, 970.)

Here, even if the plaintiff could establish the first three elements of this test, the record conclusively establishes that Leone was not under Officer Coffey's "direct and immediate control" when she was injured. The facts establish that Officer Coffey pulled Leone over to the side of the road so that he could write her a ticket for having an expired license plate. When Coffey told Leone that the plate was expired, she refused to believe him. According to Leone, Coffey responded, "If you don't believe me, then get out and look." Leone testified that she interpreted this comment as an order to get out of her car and look at the license plate.

These facts do not support a finding that Leone was under the direct and immediate control of Officer Coffey. In determining whether the control prong of the special duty rule is satisfied, courts have considered whether the municipality "was responsible for the occurrence which gave rise to the need for protection." (*McGuckin v. Chicago Union Station* (1989), 191 Ill. App. 3d 982, 993.) In this case, Leone and not Coffey was responsible for the

occurrence which gave rise to her injuries. Leone drove her vehicle with an expired license plate, thereby necessitating Officer Coffey's traffic stop. Despite the fact that Leone knew or should have known that her license plate was expired, she nevertheless persisted in challenging Officer Coffey's assertion to that effect. Officer Coffey never ordered or compelled Leone to leave her car. Rather, he simply elected not to be swayed by her persistent effort to avoid receiving a traffic citation. Leone was always free to remain in her automobile and acknowledge that she had violated the law. Instead, she elected to persist in her disbelief and, as a means of proving that her disbelief was "genuine," left her vehicle to "verify" the expiration date on her license plate. Officer Coffey did not cause Leone to place herself at risk. It was Leone's decision to dispute Officer Coffey's statements. It was also her choice to leave her vehicle to examine her expired plate.

Not surprisingly, Leone claimed at trial that she believed that Officer Coffey was ordering her to exit her vehicle. Direct and immediate control, however, cannot be established simply because an injured plaintiff claims that she "subjectively believed" that a police officer was issuing a direct order. Rather, the direct and immediate control element must be measured by an objective view of the officer's actions, and is satisfied only if a *reasonable person* in the plaintiff's position would have concluded that the officer was issuing a direct order. (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501.) Otherwise, *any* contact between a private citizen and a police officer will be sufficient to establish the direct and immediate control element necessary to create a special duty.

Applying an objective, rather than a subjective, test, it is evident that Coffey never "ordered" Leone to exit her vehicle and never assumed direct control over her

person. Officer Coffey's conduct was similar to that at issue in *Marvin v. Chicago Transit Authority* (1983), 113 Ill. App. 3d 172. The plaintiff in *Marvin* was attacked near the cashier's window in a subway station. A Chicago police officer chased the youths away, but refused the plaintiff's request to accompany him down to the platform. The officer told the plaintiff that the youths were going in a different direction. When the plaintiff reached the platform, however, the youths were waiting and beat him severely. The appellate court affirmed the dismissal of the plaintiff's complaint, holding that "[t]he mere disjunctive allegation that the police officer 'directed, permitted or caused' plaintiff to descend to the platform *** does not meet this *** requirement." *Marvin*, 113 Ill. App. 3d at 177.

The police officer's suggestion in *Marvin* that it was safe for the plaintiff to descend to the subway platform was similar to Officer Coffey's suggestion in this case that Leone could see for herself that her license plate was expired. In neither case did the police officer's suggestion qualify as a direct order or an assumption of direct and immediate control over the plaintiff. Rather, in both cases the injured plaintiffs chose to place themselves in a position of peril and then sought to blame the officer involved for "forcing" them to make that choice.

Furthermore, even if the four requisite elements of the special duty rule were satisfied in this case, the City is not liable for Officer Coffey's conduct because his actions were not willful and wanton. Consequently, the City is immune from liability under the express terms of the Tort Immunity Act.

The majority rejects this claim because it finds that the "special duty" doctrine is an exception to the statutory immunity conferred upon municipalities under the Tort Immunity Act. According to the majority, once the four elements of the "special duty" doctrine are estab-

lished, a municipality is liable for injuries resulting from a police officer's ordinary negligence in enforcing laws. The majority's decision reflects a fundamental misconception of the relationship between the "special duty" doctrine and the Tort Immunity Act.

The "special duty" doctrine is *not* an exception to the common law doctrine of sovereign immunity or to the statutory immunity conferred upon municipalities in the Tort Immunity Act, as the majority suggests. Rather, the doctrine is an exception to the common law "public duty" rule. The public duty rule provides that law enforcement officials owe *no duty* to protect individual citizens. Rather, the police owe a duty to the public at large to enforce and execute laws for the well-being of the entire community. (*Schaffrath v. Village of Buffalo Grove* (1987), 160 Ill. App. 3d 999.) The public duty rule reflects a policy decision that the police cannot guarantee the personal safety of every member of the community. (*Schaffrath v. Village of Buffalo Grove* (1987), 160 Ill. App. 3d 999.) The rule protects municipalities from liability in tort by establishing the principle that police officers have no enforceable duty to protect individual citizens from harm.

The public duty rule does not apply, however, where the police voluntarily *assume a duty* to an individual so as to elevate that person's status to something more than just being a member of the public. (*Schaffrath v. Village of Buffalo Grove* (1987), 160 Ill. App. 3d 999, 1003.) A police officer will be found to have assumed a "special duty" to protect a particular plaintiff only if the plaintiff satisfies the four-pronged test described above. Thus, the "special duty" doctrine arose as an exception to the general rule that the police owe no duty to a particular injured plaintiff. The public duty rule and the special duty exception to that rule are analytical tools used to determine whether a municipality and its employee

*owe an enforceable duty* to an individual claimant. 18 E. McQuillan, Municipal Corporations §53.04.25, at 165-66 (3d ed. 1993).

An injured plaintiff must prove that a police officer assumed a "special duty" to protect him or her from injury as part of the plaintiff's *prima facie* case against a municipality. Satisfaction of the "special duty" rule, however, does not necessarily demonstrate that the municipality is liable in tort for the plaintiff's injury. The plaintiff must also demonstrate that the municipality or its employee *breached* that duty and is liable for resulting damages. In an ordinary case, defendants are liable in tort when they negligently breach a duty of care owed to the plaintiff. The Tort Immunity Act, however, affords municipalities with *immunity* for negligent acts of police officers engaged in the enforcement and execution of laws. Under the Act, a municipality is liable in tort to an injured plaintiff only when a police officer engages in willful and wanton misconduct. Thus, the "special duty" rule determines whether the municipality owed a duty to a particular plaintiff, while the Tort Immunity Act establishes the standard of care at which a municipality will be held liable for breach of that duty.

A plaintiff who is injured as a consequence of a police officer's act or omission in the execution and enforcement of the law must satisfy two separate hurdles to obtain recovery from the municipality employing that police officer. The plaintiff must first prove the existence of a "special duty" to establish that the police officer and the municipality owed an enforceable duty to her in the first place. Even where a "special duty" exists, however, the municipality is immune from liability for *breach* of that special duty, unless the plaintiff also proves that the officer's breach was willful and wanton within the meaning of the Tort Immunity Act. Even if Leone overcame the first hurdle and demonstrated that Officer Cof-

fey assumed a special duty to protect her, she failed to demonstrate that Coffey acted willfully and wantonly. Therefore, the City is immune from liability for Leone's injuries under the express provisions of the Tort Immunity Act.

JUSTICE HEIPLE, also dissenting:

This case deals with the claim of an injured female motorist whose legs were crushed between the bumpers of her car and the police car which had stopped her for a license plate violation. She seeks recovery from the policeman's employer, the City of Chicago. The facts are that upon being pulled over and advised by the officer that her plates had expired, she expressed disbelief. The officer then suggested that if she did not believe it, she could get out and look for herself. In the process of doing just that, the police car was rear-ended by an errant motorist which pinned the unfortunate woman's legs between the rear bumper of her car and the front bumper of the police car.

Following a jury trial against the City, the jury awarded the plaintiff $422,000, which was reduced by 25% for plaintiff's contributory negligence. The net jury award and judgment amounted to $316,500. Neither the amount of the award nor the allocation of negligence is at issue in this appeal. What is at issue is the law applicable to the case. That is to say, does the doctrine of sovereign immunity shield the City from liability? And, does the special duty exception to sovereign immunity carve out an exception which will save the plaintiff's verdict?

## SOVEREIGN IMMUNITY

Our Illinois Constitution has abolished sovereign immunity "[e]xcept as the General Assembly may provide by law." (Ill. Const. 1970, art. XIII, §4.) The Local Governmental and Governmental Employees Tort Immunity

Act (Tort Immunity Act) provides that municipalities are not liable for injury resulting from an act or omission in the execution or enforcement of any law "unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2—109, 2—202 (West 1992).

## SPECIAL DUTY EXCEPTION

In derogation of the Tort Immunity Act, the courts have carved out a common law exception which is styled the special duty exception. The effect of this exception is to render municipalities liable for ordinary negligence where four elements are present, namely: (1) the municipality is uniquely aware of the particular danger or risk to which plaintiff is exposed; (2) there are specific negligent acts or omissions on the part of the municipality; (3) the specific acts or omissions must be affirmative or willful in nature; and (4) the injury must occur while the plaintiff is under the direct and immediate control of municipal employees or agents. *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 508.

## THE MAJORITY OPINION

The majority opinion, in affirming the judgment against the City, declines to consider the City's argument that the special duty exception is a usurpation of the Illinois Constitution and the Tort Immunity Act which was passed in pursuance thereof because the constitutional argument was first raised on appeal. Next, the majority concludes that the four elements of the special duty exception were met.

## ANALYSIS

Contrary to the assertion of the majority, this court is not bound to disregard a constitutional issue simply because it was not raised at the trial level. When the interests of justice require it, we can and should consider any

issue that is germane to the case whether or not it was argued below or presented at all. This is, after all, the Supreme Court of Illinois. As such, we are the ultimate and final arbiters of the law of this State. We are not obliged to overlook the Illinois Constitution, which is the supreme law in this State, merely because a litigant may have failed to assert it below. This case presents an appropriate opportunity to scrutinize and settle an issue of constitutional dimension that affects every municipal government in Illinois.

Several additional observations are in order. First, any caring person must feel some degree of sympathy for the injured plaintiff and hope that there would be some mechanism to give her compensation. Second, there is no legal liability on the part of the policeman or the City of Chicago.

There is no liability because sovereign immunity bars it; because the courts cannot, by expounding a so-called special duty exception, legitimately override the Illinois Constitution and Acts passed in pursuance thereof; and finally, because even if the special duty exception were to be applied, it does not fit the facts of this case.

The first element of the special duty exception was not met since there was no unique awareness of the particular danger of standing between two stopped cars along the shoulder of a busy highway. Such awareness should be expected of any person using the highway. The fourth element of immediate control was not met since the police officer did not order the woman to place herself between the two cars. He simply told her she could check the license plate herself if she wanted to. She had no obligation to do so.

While the majority opinion does not expressly acknowledge it, its decision represents an attempt to do equity to an injured plaintiff in the face of law which clearly bars recovery. Although the individual plaintiff in

the instant case is benefitted by this decision, that benefit is imposed at the defendant's cost. And more ominously, the general law applicable to future cases has been rendered incoherent. Moreover, the holding has exceeded this court's legitimate authority by overturning *sub silentio* a constitutionally authorized legislative act mandating the doctrine of sovereign immunity as applied to Illinois municipalities.

The current trend in tort law seems to be developing into a two-step process. The first step is to determine whether someone has been injured. The second step is to determine who should pay for the injury. The second step, as in the case at hand, often requires credulity as to the facts and a careless regard for the application of the law. The majority opinion here is consistent with that process.

In fairness, it must be noted that this trend did not begin with the instant case. There is ample precedent for it. In fact, the entire special use doctrine is a judicial effort to evade a law that judges do not like. That is to say, it represents a judicial attempt to whittle away at and, in a broader sense, to overthrow the doctrine of sovereign immunity.

If I may inject a personal note, I do not like the doctrine of sovereign immunity. It was unfair and antisocial dogma in its inception and it remains so today. Citizens should have recourse against government units for acts of ordinary negligence. Private corporations may be sued for ordinary negligence. Private citizens may likewise be sued. Municipal corporations should be subject to the same liabilities. Municipalities can either carry insurance or decide to bear the risk of being self-insurers. In either case they are in a superior position to bear the risk of negligent acts than is the hapless plaintiff who may be injured, maimed or killed by those negligent acts. My dissent in the case at hand is not because I lack sympa-

thy for the injured plaintiff nor because I like the doctrine of sovereign immunity. Rather, I dissent because I believe that this court has a duty to follow the law and to apply it in a coherent and consistent manner. Failure to do so is productive of anarchy and chaos. There is a mechanism to change the law. In the case at hand, the Illinois General Assembly has the constitutional authority to do so. I would prefer that it would. Until that day, however, I regard it as an evil for this or any other court to disregard the law and to misinterpret the facts in an effort to reach what may be regarded as a fair or equitable result in a particular case.

For the reasons given, I respectfully dissent.