ROBERT TOWNER, a Minor, by Hercules Towner, *et al.*, Plaintiff-Appellant, v. BOARD OF EDUCATION OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (3rd Division) No. 1—93—4574

Opinion filed October 18, 1995.

J.A. Walker, of Chicago, for appellant.

James B. Dykehouse, of Chicago, for appellee McKinley Brister.

Walter Jones, Jr., and Jorge V. Cazares, both of Pugh, Jones & Johnson, P.C., of Chicago, for other appellees.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Robert Towner, a minor, by his parents, Hercules and Hattie Towner, filed this action to recover damages against defendants Chicago Board of Education, Dr. Edward Oliver, McKinley Brister, William Harris, Chicago police department, and police officer Herman Crayton, star No. 8886, for the personal injury he received on school grounds while he was a student at Percy L. Julian High School (Julian), in Chicago, Illinois. The personal injury was inflicted by a nonstudent of Julian. The trial court entered a summary judgment in favor of the defendants, from which the plaintiff has appealed. We affirm.

Plaintiff was a student at Julian, located at 103rd and Elizabeth Streets in Chicago. The school is governed by the Chicago Board of Education. Dr. Edward Oliver was the principal, McKinley Brister was the vice-principal, and William Harris was the assistant principal of the school. Herman Crayton was a part-time plainclothes security guard at the school. Oliver, Brister, Harris and Crayton were all employed by the Chicago Board of Education. The Chicago police department, although named as a defendant, is not involved in the case.

On November 23, 1988, the plaintiff was injured when Assmaiel

Nelson struck him on the head with a golf club. Nelson was a student at Englewood High School in Chicago; he was never a student at Julian. Nelson pleaded guilty to criminal charges of aggravated battery and was incarcerated as a result of the incident.

The plaintiff and some of his schoolmates, including Torrence Green, Curtis Barry, Bryant Dillon and Marion Veal, were members of a nonschool-related social club called the PJ Players. PJ Players consisted mainly of school band members. Another nonschool-related social club at the school was the U Phi Dogs composed primarily of school football players. The two groups were rivals; they had several altercations.

There was another nonschool-related social club called the Bruzz, comprised mainly of students from Lindbloom High School in Chicago. The Bruzz was informally allied with the U Phi Dogs and was therefore a rival of the PJ Players. As a result of a history of conflicts and fights between the rival social clubs, all nonschool-related social club organizations and their activities were banned from school buildings and grounds at Julian. Nelson, the perpetrator, was a member of the Bruzz.

The day of the incident was the last day of school before the Thanksgiving holiday. At approximately 1:30 p.m., a crowd congregated on the school grounds outside the school building. Crayton was the security guard on duty that day. After learning that a crowd was gathering outside on the school grounds, Crayton left his office and went outside. He observed a large number of students milling around, and he proceeded to disperse the crowd. He remained outside on the school grounds dispersing the crowd until after 3 p.m. During that time, he told plaintiff at least twice to go back into the school building. After Crayton had successfully cleared the area of students that had gathered, he went home because it was the end of his work day.

After Crayton's departure, a crowd again developed. Soon a fight occurred between Bryant Dillon, a member of the PJ Players, and a person whose brother was a member of the U Phi Dogs. While the fight was in progress, plaintiff voluntarily went over and attempted to stop the fight. Whereupon Nelson struck plaintiff on the head with a golf club, causing the injury alleged in this case.

After plaintiff was hit with the golf club, Curtis Barry and Marion Veal walked him into the school building. They immediately encountered a teacher, Darcell Williams, who offered to take plaintiff to a hospital; Darcell Williams also called plaintiff's home to alert his parents of his injury and whereabouts. Notwithstanding Darcell Williams' offer of assistance, the three students went to the hospital on their own.

After substantial discovery, including the submission of affidavits and taking of depositions, and extensive briefing and oral argument on defendants' motion for summary judgment, the trial court granted the motion and entered summary judgment in favor of the defendants. This appeal followed.

As to whether summary judgment was proper, we need only address two issues. The first issue is whether the Local Governmental and Governmental Employees Tort Immunity Act (Act) is applicable. (745 ILCS 10/1—101 (West 1992).) The second issue is whether as a matter of law plaintiff's injury was not caused by the alleged wilful and wanton conduct of the defendants.

■ As to the first issue, the Act provides that "neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property." (745 ILCS 10/3—108 (West 1992).) It also provides that neither a local public entity nor a public employee is liable for failure to provide police protection service or, if police protection service is provided, for failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals. (745 ILCS 10/4—102 (West 1992).) A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes wilful and wanton conduct. 745 ILCS 10/2—202 (West 1992).

The Act further provides that "local public entity" includes school districts and all other local governmental bodies. (745 ILCS 10/1—206 (West 1992).) Public employee means an employee of a local public entity. (745 ILCS 10/1—207 (West 1992).) The purpose of the Act is to protect local public entities and public employees from liability arising from the operation of government. 745 ILCS 10/1—101.1 (West 1992).

Here, plaintiff alleges in his complaint that the incident occurred "on the grounds of Percy Julian High School." In addition, although the word "supervision" is not stated in plaintiff's complaint, it is clear from the complaint and the record that plaintiff seeks to impose liability upon the defendants for an injury supposedly caused by a wilful and wanton failure to supervise an activity on or the use of the school grounds. It is likewise clear from the record that plaintiff alternatively seeks to impose liability upon the defendants for an injury supposedly caused by a wilful and wanton failure to provide police protection or for wilful and wanton failure to provide adequate police protection, or wilful and wanton failure to prevent the commission of a crime.

Under the circumstances, the basic facts appearing in the record

plainly establish without reasonable doubt that the Act is applicable to this case with regard to all defendants. It applies to defendant Board of Education of the City of Chicago, as a local public entity, and defendants Oliver, Brister, Harris, and Crayton, as public employees. (See 745 ILCS 10/3—108 (West 1992).) In an apparent attempt to circumvent the imposition of the Act, plaintiff contends that he was injured because the defendants wilfully and wantonly failed to obtain medical or other emergency assistance for him after he was hit with the golf club. This contention, however, is not supported by the record as a matter of law.

Wilful and wanton conduct means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others. (See 745 ILCS 10/1—210 (West 1992).) In the present case, after plaintiff was injured by Nelson, he was walked into the school building by his schoolmates, Curtis Barry and Marvin Veal; they immediately encountered Darcell Williams, a teacher at Julian. The teacher offered to take plaintiff to the hospital, and she called plaintiff's home to alert his parents of his injury and whereabouts. Notwithstanding Williams' offer of assistance, Barry, Vail and plaintiff went to the hospital on their own.

Also, when the school principal, Oliver, saw that plaintiff was injured, he told Barry and Veal to take plaintiff to another school teacher, Alfred Street. Street said that plaintiff should be taken to the hospital. Plaintiff was taken to the hospital by Barry and Vail, where he was treated. There is no medical evidence that there was any delay in the medical treatment that plaintiff received, and there is nothing in the record that plaintiff was harmed, injured or damaged due to any delay in receiving medical treatment.

■ It follows that plaintiff's contention that he was injured because the defendants wilfully and wantonly failed to obtain medical or other emergency assistance for him after he was hit with the golf club is void of any merit as a matter of law. The facts cannot reasonably support a conclusion that plaintiff was injured with regard to medical or emergency assistance because the defendants actually or deliberately intended to cause the plaintiff harm; nor can they reasonably support a conclusion that with regard to medical or emergency assistance the plaintiff was injured because the defendants showed an utter indifference to or conscious disregard for the plaintiff's safety. See 745 ILCS 10/1—210 (West 1992).

On appeal, the plaintiff, for the first time, raises the argument that the Act does not apply to this case because of the common law special duty exception to the Act. (See *Leone v. City of Chicago* (1993),

156 Ill. 2d 33, 619 N.E.2d 119.) Since plaintiff failed to plead or urge the common law special duty exception in the trial court, he may not urge this ground on appeal to challenge the adverse judgment against him. The issue was waived. (*Leone*, 156 Ill. 2d at 38, 619 N.E.2d at 122; *Sidwell v. Griggsville Community Unit School District No. 4* (1992), 146 Ill. 2d 467, 474-75, 588 N.E.2d 1185, 1189.) As an alternative to disposing of the issue because of waiver, however, we also hold that even if the issue were not waived, the common law special duty exception is not applicable to the facts of this case.

■ In derogation of the Act, the judiciary has carved out an exception. The exception falls under the nomenclature of the common law special duty exception. (*Leone*, 156 Ill. 2d at 37, 619 N.E.2d at 121.) The effect of this exception is that local public entities may be liable for their acts or omissions where four factors are present at the time the plaintiff is injured: (1) the entity is uniquely aware of the particular danger or risk to which the plaintiff is exposed; (2) the injury was caused by specific acts or omissions on the part of the entity; (3) the specific acts or omissions must be affirmative or wilful in nature; and (4) the injury must occur while the plaintiff is under the direct and immediate control of the entity's employees or agents. (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 508, 565 N.E.2d 654, 658-59; *Barth v. Board of Education* (1986), 141 Ill. App. 3d 266, 278, 490 N.E.2d 77, 84-85.) In the present case we need only take into account the fourth factor because it is clear that the plaintiff was not under the direct and immediate control of any of the defendants at the time he was injured.

■ Plaintiff contends he was under the direct and immediate control of Crayton at the time that he was injured. This contention is totally without merit. After he became aware that a crowd had been "milling around" outside the school building, Crayton went outside to disperse the crowd. He remained outside dispersing the crowd until after 3 p.m. Plaintiff was outside and was told by Crayton at least twice to go back into the school building. By 3:10 p.m. to 3:15 p.m., Crayton had cleared the outside area of the crowd and proceeded home after his work day.

After Crayton's departure, another group gathered about and a fight started. The plaintiff then voluntarily went over and tried to break up the fight while it was in progress. It was then that plaintiff was hit on the head with a golf club and was injured. Under the circumstances, as a matter of law, plaintiff was not under the direct and immediate control of Crayton when he was injured. As a result, the common law special duty exception to the Act is not applicable to this case. The Act, however, is applicable.

We next address the second issue, which is whether as a matter of law plaintiff's injury was not caused by the alleged wilful and wanton conduct of the defendants. The first point in plaintiff's brief states: "The Allegations As Stated In Plaintiff/Appellant's Complaint Are Well Pled As Wilful and Wanton Conduct." This point is misdirected. Plaintiff's point is applicable to motions to dismiss for failure to state a cause of action. In the present case, however, a summary judgment was entered. The review of a motion to dismiss for failure to state a cause of action is much different than the review of a motion for summary judgment.

■ A motion to dismiss for failure to state a cause of action admits all well-pled facts in the complaint and attacks only the legal sufficiency of the complaint. All well-pled factual allegations must be taken as true. Factual defenses, supported by matters in discovery, may not be raised; the court may consider only the allegations of the complaint. *Tim Thompson, Inc. v. Village of Hinsdale* (1993), 247 Ill. App. 3d 863, 881, 617 N.E.2d 1227, 1240; *Schons v. Monarch Insurance Co.* (1991), 214 Ill. App. 3d 601, 605, 574 N.E.2d 83, 86.

A summary judgment motion is unlike a motion to dismiss for failure to state a cause of action. A summary judgment motion should be granted if the pleadings, depositions and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (735 ILCS 5/2—1005(c) (West 1992).) Where all of the matters that are properly before the court on a motion for summary judgment show that at trial a directed verdict would have to be entered, summary judgment is proper. *Wilson v. Bell Fuels, Inc.* (1991), 214 Ill. App. 3d 868, 872, 574 N.E.2d 200, 203; *Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813, 816-17, 416 N.E.2d 328, 331; *Leischner v. Daniel's Restaurant, Inc.* (1977), 54 Ill. App. 3d 568, 572, 370 N.E.2d 157, 159.

■ Thus, plaintiff's references to allegations in his complaint cannot stand as evidence to withstand the defendants' motion for summary judgment on the issue of wilful and wanton conduct. In order to withstand the motion there must be evidence, as opposed to mere allegations, which establishes a genuine issue of fact as to the plaintiff being injured because of wilful and wanton conduct by a defendant.

Plaintiff contends in his brief: "Furthermore, the allegations in the complaint, and as further supported by deposition testimony and affidavits, indicate that defendant/appellee Brister had actual knowledge of the impending danger to plaintiff/appellant and did nothing to insure plaintiff/appellant's safety." We initially note that this

contention is flawed in its foundation because the defendants were not insurers of the plaintiff's safety.

In support of his contention, plaintiff refers to a deposition statement by Alfred Street, a teacher at Julian. In his deposition, Street stated: "Well, Mr. Brister made a statement, a general statement like he knew that was going to happen. I mean, that's the way the statement came out to me." Plaintiff also refers to an affidavit statement made by a PJ Player member, Torrence Green. Green stated that on the day of the incident, Brister stated "that he knew the group of boys were going to come to Percy Julian High School in an attempt to injure the students at Percy Julian High School, but that he did not do anything about it because he wanted to teach the students at Percy Julian High School a lesson." Brister was asked the following interrogatory and gave the following answer:

"Q. State your version of the facts leading up to, during and after the incident stated in Plaintiff's Complaint.

A. Defendant Brister neither saw nor knew anything of the alleged incident at the time alleged to have occurred."

There is nothing further in the record on the plaintiff's point.

A review of all of the matters in the record establishes that when the facts are viewed in the light most favorable to the plaintiff, the plaintiff's contention that he was injured because Brister had actual knowledge of the impending danger to the plaintiff and did nothing to insure his safety is contrary to the facts and could not stand. It is clear from the record that the incident occurred when a nonschool-related gathering of teenagers who belonged to two different non-school social groups began to fight on the school grounds outside the school building, at the end of or after the school day. Plaintiff voluntarily became involved in the fight and was hit on the head by a golf club that was wielded by a student from another school.

Plaintiff's voluntary act of getting involved in the fight and the spontaneity of the criminal act causing his injury, perpetrated by a nonstudent at Julian, belie plaintiff's claim that he was injured because Brister had actual knowledge of the impending danger to plaintiff and wilfully and wantonly did nothing to insure the plaintiff's safety. Assuming that Brister was aware that teenagers might gather outside the school building on the school grounds in nonschool-related activities at the end of or after the school day, such knowledge cannot be converted into actual knowledge that the plaintiff would voluntarily enter into a fight in progress and get hit on the head with a golf club, a criminal act perpetrated by a nonstudent at the school. Brister would have to be an omniscient being and an insurer of the plaintiff's safety if what plaintiff contends

were true. As a matter of law, Brister is neither an omniscient being nor an insurer of plaintiff's safety. Plaintiff's contention is therefore untenable as a matter of law.

Plaintiff also claims that he was injured because of Brister's wilful and wanton conduct in not letting one of his schoolmates, Dillon, use his office phone to call the police after plaintiff had been hit on the head with the golf club by Nelson. An excerpt of three pages from Dillon's deposition appears in the record. According to the excerpt, Dillon stated at his deposition that after the plaintiff was hit with the golf club by Nelson, Dillon left the fight in which he was a participant and went back into the school building and went into Brister's office. The excerpt provides that Dillon then stated:

"A. I picked up the phone to try to call the police, and he told me to hang it up.

Q. Had you talked to Mr. Brister before you picked up the phone?

A. Yeah, I believe I told him, 'Would you please call the police and ambulance. They're out there fighting. They've got guns and everything, and my friend has been hit with a golf club. We need an ambulance and the police.'

Q. You say you believe you had talked to him before you picked up the phone?

A. Yeah, I don't think I just went in there—I know he told me 'Hang that phone up.' He wouldn't let me call. I don't know exactly what words he said, but I know he made me hang the phone up."

Dillon also stated:

"Q. You had not seen Mr. Brister out there while this fighting was going on, is that correct?

A. No, I never seen him.

Q. Had you ever made any phone calls from Mr. Brister's office before?

A. If I did, he didn't know about it."

There is no testimony or evidence that the police were not called. Nor is there any testimony or evidence that there was a delay in calling the police; nor that anything that Dillon stated contributed in any way to plaintiff's injury or to the extent of plaintiff's injury. Under the circumstances, plaintiff's contention that he was injured because of wilful and wanton conduct by Brister cannot stand as a matter of law.

Finally, plaintiff contends that he was injured because of wilful and wanton conduct by Crayton. The facts establish that before he dispersed the crowd on the school grounds, Crayton twice told the plaintiff to go back into the school building. Crayton cleared the area

outside by about 3:10 to 3:15 p.m. and went home because his work day was over. After he left, another crowd developed. Crayton was not on the scene when plaintiff voluntarily got involved in the fight in which he was injured. There is plainly no evidence to support plaintiff's claim that he was injured because of wilful and wanton conduct by Crayton.

Summary judgment is proper where there is no issue as to a material fact and the moving party is entitled to judgment as a matter of law. (735 ILCS 5/2—1005(c) (West 1992).) Since the Act is applicable to this case and there is no evidence to support plaintiff's allegations that he was injured because of wilful and wanton conduct by the defendants, the trial court properly entered summary judgment in favor of the defendants. When the trial court entered summary judgment, however, it also relied on section 34—84a of the School Code (Code) (105 ILCS 5/34—84a (West 1992)). The trial court found that the Code and the following cases which interpret the Code are applicable to this case: *Sidwell v. Griggsville Community Unit School District No. 4* (1992), 146 Ill. 2d 467, 588 N.E.2d 1185; *Thomas v. Chicago Board of Education* (1979), 77 Ill. 2d 165, 395 N.E.2d 538; and *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 347 N.E.2d 705. We need not discuss or decide whether the Code or the cases cited are applicable. Summary judgment was proper for the reasons that we have stated.

Accordingly, the summary judgment in favor of the defendants is affirmed.

Affirmed.

GREIMAN, P.J., and CERDA, J., concur.