Kathleen F. **EGEBERGH,** Individually and as Special Administratrix of the estate of Edward J. Fitzgibbons, deceased, Plaintiff,

v.

Michael **SHEAHAN,** as Sheriff of Cook County, Village of Mount Prospect, Commander David Nicholson, individually and as agent of Village of Mount Prospect, Defendants.

**No. 96 C 5863.**

United States District Court, N.D. Illinois, Eastern Division.

Feb. 24, 1997.

---

Steven Jay Seidman, Law Offices of Steven J. Seidman, Chicago, IL, for Edward J. Fitzgibbons, Kathleen F. Egebergh.

Terry L. McDonald, Margaret A. Glass, Noelle. Swanson Berg, Cook County State's Attorney, Chicago, IL, for County of Cook, Michael Sheehan.

Thomas J. Brosnan, Elizabeth Ann Knight, Knight, Hoppe, Fanning & Knight, Ltd., Des Plaines, IL, for Village of Mount Prospect.

Elizabeth Ann Knight, Knight, Hoppe, Fanning & Knight, Ltd., Des Plaines, IL, for David Nicholson.

### MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Kathleen Egebergh ("Egebergh") has sued several defendants over the death of her brother Edward Fitzgibbons ("Fitzgibbons") on July 22, 1996 while he was in defendants' custody. Cook County Sheriff Michael Sheahan ("Sheriff") has moved to dismiss Counts I through III of the First Amended Complaint ("FAC"). For the reasons set forth in this memorandum opinion and order, the motion is granted in part and denied in part.

### Facts [1]

Fitzgibbons was a diabetic who required two daily insulin shots and proper nutrition to control his condition. On July 21, 1996 he was arrested on a shoplifting charge and was detained by the Police Department ("Department") of the Village of Mount Prospect ("Village"), which employed Commander David Nicholson ("Nicholson").

On July 22, 1996 Fitzgibbons was in Village's custody under Nicholson's supervision when he told the latter of his diabetic condition and of his immediate need of an insulin injection. Nicholson refused and "deprived [Fitzgibbons] of his medication" (FAC ¶ 10). Although not explicitly alleged, it may be inferred from that and other allegations that Fitzgibbons carried his medication with him and that Department employees confiscated it when he was placed in detention.

On that same day Fitzgibbons was transported to a bond hearing in Rolling Meadows. It is not clear whether Village's employees or Sheriff's employees supervised the transport. In any event, Nicholson refused to permit Fitzgibbons' insulin to be transported to the hearing with him, so the medication remained behind at the Mount Prospect Police Station.

---

1. Although this Court of course makes no factual findings here, this opinion omits such qualifying labels as "alleged" because of the need to credit the FAC's allegations on the current motion.

At the courthouse in Rolling Meadows Fitzgibbons was in the custody of Sheriff's employees. There an unknown deputy merely gave Fitzgibbons something to drink after being told of Fitzgibbons' diabetic condition and of his need for insulin. That deputy made no effort to retrieve Fitzgibbons' medication from Village's Police Station or to obtain medical care for him.

As a result of defendants' refusal (or informed failure) to permit Fitzgibbons to receive his insulin shot, he suffered an adverse diabetic reaction and died later that day. Based on those events, the FAC[2] asserts a series of claims against all defendants: one under 42 U.S.C. § 1983 ("Section 1983") in Count I, one for negligence—wrongful death in Count II, one for negligence—survival in Count III, one for willful and wanton conduct—wrongful death in Count IV and one for willful and wanton conduct—survival in Count V. Sheriff has now moved to dismiss Counts I through III.

### Motion-to-Dismiss Standards

On Sheriff's Fed.R.Civ.P. ("Rule") 12(b)(6) motion, all of the Complaint's well-pleaded allegations must be credited, with all reasonable inferences drawn in Egebergh's favor (see, e.g., *Sherwin Manor Nursing Ctr., Inc. v. McAuliffe*, 37 F.3d 1216, 1219 (7th Cir. 1994)). Dismissal is proper only if it is clear from the Complaint that no set of facts consistent with its allegations would entitle Egebergh to relief (*Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984), citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).[3]

### Section 1983 Claim

Sheriff argues that he cannot be held liable in either his individual or his official capacity

**2.** Initially this action was filed in the Circuit Court of Cook County, but it was timely removed to this District Court on September 13, 1996. Just under a month later the FAC was filed to supplant the original Complaint.

**3.** It is about time that the State's Attorney's Office stopped citing cases dating back to the early and middle 1980s (see Sheriff's Mem. 2) that (1) espouse the now-discredited insistence on fact pleading rather than notice pleading and (2) disavow the adequacy of legal conclusions as per-

based on the FAC's allegations. Egebergh does not respond to those arguments—instead she merely acknowledges that Count I is not stated as well as it might be and requests leave to replead it "to cure any defects that may exist."

That position really amounts to an admission that Sheriff's arguments are well-founded. And because Egebergh has declined to make any substantive argument in defense of Count I, this Court declines to make them for her. Sheriff is therefore dismissed from Count I without prejudice to Egebergh's repleading that claim (if she can in light of Sheriff's substantive objections) by a filing on or before March 17, 1997.

### Negligence Claims

Sheriff urges that Counts II and III must be dismissed because he is immune from tort liability for negligence on the facts of this case under Sections 4–103 and 4–105 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"), 745 ILCS 10/4–103 and 4–105. Here is Section 4–103:

> Neither a local public entity nor a public employee is liable for failure to provide a jail, detention or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, supervision or facilities therein. Nothing in this Section requires the periodic inspection of prisoners.

And here is Section 4–105:

> Neither a local public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but this Section shall not

missible pleading. In the former respect, see *Leatherman v. Tarrant County Narcotics Intell. & Coord. Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993), and in the latter respect see *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989) (expressly confirming "both factual allegations and legal conclusions" as legitimate ingredients of a complaint)—both of those cases being unanimous decisions of the Supreme Court.

apply where the employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care. Nothing in this Section requires the periodic inspection of prisoners.

According to Sheriff, there is no "special duty exception" to governmental tort immunity that applies to detention facilities, so he cannot be held liable on a negligence theory for any failure to provide Fitzgibbons with medical care. To that end Sheriff relies largely on *Fraley v. City of Elgin*, 251 Ill. App.3d 72, 190 Ill.Dec. 407, 411, 621 N.E.2d 276, 280 (1993), which held that a municipality could not be held liable under Section 4-103 for a detainee's suicide where plaintiff claimed the death was caused by defendant's alleged failure to monitor or supervise a jail facility.

But here the FAC does not allege any conduct relating to the maintenance or supervision of a detention facility. Instead it is based on the refusal to provide requested essential medical care to Fitzgibbons, who was not even housed in a detention facility during all of the events in question. By its own terms Section 4-103 is inapplicable here. And because *Fraley* addressed only Section 4-103 (and not Section 4-105), it is irrelevant to the analysis.

By taking the approach that he did, Sheriff has left wholly unaddressed the real issue: Does the special duty exception apply to Section 4-105?[4] And because none of the case law addressing Section 4-105 (which is sparse to begin with) speaks to that possible exception, this opinion looks to the origin and purpose of the special duty exception to see whether it should apply here.

■ At Illinois common law municipalities were not liable for (among other things) the negligence of their police officers or fire fighters in the performance of their official duties (*Leone v. City of Chicago*, 156 Ill.2d 33, 188 Ill.Dec.755, 757, 619 N.E.2d 119, 121 (1993)). After *Molitor v. Kaneland Community Unit Dist. No. 302*, 18 Ill.2d 11, 163 N.E.2d 89, 96 (1959) abolished such common law governmental immunity, the General Assembly responded by enacting the Tort Immunity Act (see *Burdinie v. Village of Glendale Heights*, 139 Ill.2d 501, 152 Ill.Dec. 121, 125, 565 N.E.2d 654, 658 (1990), *overruled in limited part on other grounds, McCuen v. Peoria Park Dist.*, 163 Ill.2d 125, 205 Ill.Dec. 487, 643 N.E.2d 778 (1994)). That statute does not, however, foreclose the common law special duty exception to governmental tort immunity, which applies in certain limited circumstances (*id.* 152 Ill.Dec. at 125-26, 565 N.E.2d at 658-59). As *Doe v. Calumet City*, 161 Ill.2d 374, 204 Ill.Dec. 274, 280, 641 N.E.2d 498, 504 (1994) (citation omitted) teaches:

> An exception to both the common law public duty rule and the statutory immunities has evolved where the actions of the municipality's agent showed a special relationship with the plaintiff that created a duty different from the duty owed to the general public. This court has created a four-part test to determine whether plaintiffs can avail themselves of the special duty exception: (1) The municipality must be uniquely aware of the particular danger or risk to which plaintiff is exposed; (2) there must be specific acts or omissions on the part of the municipality; (3) the specific acts must be affirmative and willful in nature; and (4) the injury must occur while the plaintiff is under the direct and immediate control of municipal employees or agents.

■ Application of that four-part test to the facts in the FAC makes clear that the special duty exception permits Egebergh's negligence claims against Sheriff. First, Fitzgibbons made Sheriff, through an unidentified deputy, specifically aware of his diabetic condition and his need for insulin

---

4. Section 4-105 is expressly made inapplicable where "willful and wanton" conduct is involved, and FAC ¶ 17 (part of both Counts II and III) characterizes all defendants' conduct as "willful." Although that might arguably create a reasonable inference of wantonness as well, so as to take the two counts out of the purview of Section 4-105, this opinion will assume otherwise because Egebergh has included a reference to "special duty" in captioning each of Counts II and III as a negligence claim.

while at the Rolling Meadows courthouse. That rendered Sheriff uniquely aware of the particular risk to Fitzgibbons (a risk not shared by the public at large). Next Sheriff's deputy failed either to retrieve Fitzgibbons' medication from Village's Police Station or to obtain medical assistance for him (the requisite "specific acts or omissions"). Third, the deputy's conduct was clearly "affirmative and willful in nature" (and FAC ¶ 17 says just that), evidencing a deliberate decision not to address Fitzgibbons' medical needs. And finally the deputy's omissions, which occurred while Fitzgibbons was under the direct and immediate control of the Sheriff's deputy and had no means of obtaining vital medication on his own, resulted in Fitzgibbons' experiencing a fatal diabetic reaction. All four elements are thus satisfied.

Sheriff's R. Mem. 2–3 argues that the special duty exception cannot apply because Section 4–105 expressly permits liability for willful and wanton conduct.[5] That position is simply wrong as a matter of law. Sheriff seeks to rely upon *Calloway v. Kinkelaar*, 168 Ill.2d 312, 213 Ill.Dec. 675, 683, 659 N.E.2d 1322, 1330 (1995) (which cites *Doe v. Calumet City*) for the proposition that the special duty exception has no application in cases involving allegations of willful and wanton misconduct. But that misreads *Calloway*. Both that case and *Doe*, 204 Ill.Dec. at 281, 641 N.E.2d at 505 make it clear that a plaintiff may avoid the bar of governmental immunity in *either* of two ways:

1. by meeting the four-prong test of the special duty exception and proving that the negligent breach of that duty caused his or her injury; *or*

2. by proving willful and wanton conduct where the relevant provision of the

Tort Immunity Act permits liability for such conduct.

Those cases stand only for the proposition that where the Tort Immunity Act permits liability for willful and wanton conduct plaintiff is not *also* required to plead the special duty exception, as some earlier cases had held (see discussion in *Doe*, 204 Ill.Dec. at 281, 641 N.E.2d at 505 and cases cited there). Instead *Leone* had earlier settled that issue to the contrary (*id.*):

> This court held [in *Leone*] that the judicially created special duty exception and the statutory willful and wanton exception [were] separate and distinct exceptions to municipal and officer liability.

But *Calloway* and *Doe* do not mean, as Sheriff thinks, that where liability for willful and wanton conduct is permitted by statute (as it is under Section 4–105), a plaintiff is somehow prohibited from pleading and proving negligence under the special duty exception instead.[6]

■ Sheriff's R. Mem. 7–10 essentially urges that the special duty exception is unconstitutional under the 1970 Illinois Constitution. Quite apart from the patent absurdity of asking a federal court to rule that the *Illinois* Supreme Court has violated the *Illinois* Constitution by announcing an *Illinois* common law rule, Sheriff's position is totally unconvincing on the merits. He relies largely upon Justice Freeman's special concurrence in *Calloway*, in which the Justice opined that Ill. Const. art. XIII, § 4 had vested sole authority to establish the extent of governmental immunity in the hands of the state legislature and not the courts. But that one–Justice position has not been adopted by the Illinois Supreme Court.[7]

---

5. After this opinion was already in final form, ready to be transcribed and issued, this Court received a notice of motion from Egebergh's counsel (to be presented on February 27) asking alternatively that this new argument by Sheriff be stricken or that Egebergh be given the opportunity to file a surreply to address the subject. In light of the result reached here, that motion is wholly unnecessary and will presumably not be presented for hearing.

6. *Calloway*, 213 Ill.Dec. at 682, 659 N.E.2d at 1329 held that the Domestic Violence Act, under which the plaintiff there sued, permitted recov-

ery for willful and wanton conduct but not for ordinary negligence. There is no equivalent statutory bar to Egebergh's negligence claims in this case.

7. Sheriff's R. Mem. 9–10 is equally wrong in contending that Justice Freeman's position has been validated by the Illinois Supreme Court and the Illinois Appellate Court in cases in which they have refused to read a common law willful and wanton conduct exception into provisions of the Tort Immunity Act that do not expressly permit such an exception. *Barnett v. Zion Park Dist.*, 171 Ill.2d 378, 216 Ill.Dec. 550, 556–57,

*Calloway,* 213 Ill.Dec. at 683, 659 N.E.2d at 1330 itself held:

> We do not consider it an appropriate use of our supervisory authority to decide defendants' constitutional challenge, an issue which is unnecessary to our disposition of the instant case.... In the case at bar, plaintiff did not assert a common law theory of negligence, plead the elements of the special duty doctrine, or request this court to apply such exception to the common law doctrine of governmental immunity. Therefore, defendants' attempt to persuade this court to declare the special duty doctrine unconstitutional is not a proper subject for our review in this case. Were we to use the instant appeal as a vehicle for holding the special duty doctrine unconstitutional we would be overruling a long line of precedent without a clear rationale or present need for such action. The specific factual circumstances of each case will determine whether a plaintiff is owed a duty by law enforcement officials, the standard of care by which the officers' conduct is to be measured, and whether and to what extent immunities are available.

Where Illinois law provides the rule of decision, as it does for Egebergh's negligence claims, the Illinois Supreme Court has the last word. Sheriff's constitutional challenge must fail.

In sum, the FAC adequately sets out all of the elements of the special duty exception. Egebergh's Count II and III negligence claims against Sheriff are therefore viable. Sheriff's motion to dismiss those counts is denied.

### Conclusion

Because Egebergh has not contested Sheriff's argument as to the inadequacy of Count I, Sheriff is dismissed from that count without prejudice to Egebergh's repleading of that count on or before March 17, 1997.

Because Egebergh has properly alleged all of the elements of the special duty exception

to Sheriff's statutory immunity, her negligence claims against Sheriff in Counts II and III are proper. Sheriff's motion to dismiss is denied as to those counts, and Sheriff is ordered to answer those counts on or before March 10, 1997.

665 N.E.2d 808, 814–15 (1996) and *Jefferson v. Sheahan,* 279 Ill.App.3d 74, 215 Ill.Dec. 815, 817–20, 664 N.E.2d 212, 214–17 (1996) have simply refused to permit a common law willful and wanton conduct exception to certain provisions of the Tort Immunity Act because the state legislature had *expressly* included that exception in other provisions, so that its omission from certain other provisions appeared to reflect a deliberate legislative decision.