# Illinois Official Reports

## Appellate Court

---

**Albert v. Board of Education of the City of Chicago, 2014 IL App (1st) 123544**

---

| | |
|---|---|
| Appellate Court Caption | AN-JANETTE ALBERT, as Special Administrator of the Estate of DERRION ALBERT, Deceased, Plaintiff-Appellant, v. THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Defendant-Appellee. |
| District & No. | First District, Third Division<br>Docket No. 1-12-3544 |
| Filed | November 26, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly entered summary judgment for the Board of Education of the City of Chicago in plaintiff's wrongful death and survival action for the death of her son during a fight that occurred while her son was on his way home from school, notwithstanding plaintiff's contentions that defendant knew a fight had occurred earlier in the day on school property, that the fight would continue later and that defendant failed to adequately protect her son when the fight broke out on his way home, since defendant's failure to provide police protection and services was immunized pursuant to section 4-102 of the Tort Immunity Act, especially when the fight took place after school hours, off the school grounds, and when no activity supervised by the school was taking place; furthermore, defendant had no duty to decedent under the common-law public duty rule and defendant was immune from liability for its discretionary disciplinary decisions under section 2-201 of the Act. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-12526; the Hon. Kathy M. Flanagan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Power Rogers & Smith, P.C., of Chicago (Larry R. Rogers, of counsel), for appellant.

James L. Bebley, General Counsel, of Chicago (William A. Morgan, Deputy General Counsel, of counsel), for appellee.

Panel

PRESIDING JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Justice Mason specially concurred, with opinion, joined by Justice Hyman.

## OPINION

¶ 1     Plaintiff filed a complaint for wrongful death and survival against defendant Board of Education of the City of Chicago (Board) following the death of her son, Derrion. Plaintiff alleged that the Board should have done something to prevent a fight after school and off school grounds and should have protected Derrion because the Board (through its employees) had notice that a fight had occurred on school property earlier in the day. The fight involved other students; Derrion was not involved in either fight. Plaintiff alleged that the Board knew that the fight between the other students would continue later and that the Board did not adequately protect Derrion later that day when the second fight broke out, not on school property, but on the route he took for his commute home. Derrion was injured in the second fight and subsequently died. Plaintiff argues that though the Board suspended a student involved in the earlier fight at school, the Board (through its employees) should have disciplined the students involved in the earlier fight in school in a different manner, such as after-school detention, and also that the Board should have protected Derrion by placing security personnel on the route for his commute home. Plaintiff repeatedly filed amended complaints alleging that the Board owed a special duty to Derrion, which the circuit court dismissed, allowing plaintiff to file only claims for wrongful death and survival based on willful and wanton conduct. The circuit court granted summary judgment in favor of the Board, ruling that plaintiff failed to allege any duty, and that section 4-102 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act), which has no exception for willful and wanton conduct and provides blanket immunity for failure to provide police protection or service (745 ILCS 10/4-102 (West 2008)), applied and that section 2-201 (745 ILCS 10/2-201 (West 2008)), which provides immunity for discretionary decisions by a public entity's employees, also applied to immunize the Board.

¶ 2     Plaintiff argues that the circuit court erred because either section 2-202 (745 ILCS 10/2-202 (West 2008)) (willful and wanton conduct in enforcing or executing a law) or section 3-108 (745 ILCS 10/3-108 (West 2008)) (willful and wanton conduct in failure to supervise)

applies. We hold neither provision applies in this case. In so holding, we reject the Board's contention that section 2-202 is inapplicable to the Board as a party because it applies only to public employees and not public entities. We reaffirm that section 2-109 provides derivative immunity or liability to public entities for injuries alleged to have been caused by the entity's employees. Rather, section 2-202 does not apply to the facts of this case on the merits, because the student code regarding discipline adopted by the Board is not a "law" within the purview of section 2-202 and because the Board was not executing or enforcing anything at the time of the incident.

¶ 3    We also hold that section 3-108 does not apply because there was no school activity being supervised at the time of the incident.

¶ 4    We hold the Board had no duty to Derrion at the time of the incident alleged in this case under section 4-102, which provides complete immunity and codified the public duty rule that public entities are not liable for failure to provide police services.

¶ 5    We further hold that the Board is immunized for any alleged discretionary disciplinary decisions made by its employees under section 2-201, and that the Board is afforded this immunity derivatively through section 2-109 of the Tort Immunity Act.

¶ 6                                BACKGROUND

¶ 7    Plaintiff's fourth amended complaint at law alleged claims against the Board in two counts under the Wrongful Death Act (740 ILCS 180/1 *et seq*. (West 2008)) and the survival provision of the Probate Act of 1975 (Survival Act) (755 ILCS 5/27-6 (West 2008)), based on the Board's alleged failure to adequately execute and enforce the student code of conduct and failure to protect plaintiff's decedent, her son Derrion. Plaintiff's fourth amended complaint also contained some allegations seemingly alleging a special duty on the part of the Board to protect Derrion. The following facts are from the pleadings and depositions. Prior to the date of the incident alleged, some students from the Altgeld Gardens neighborhood, including Derrion, transferred to Fenger High School. In July 2000, as part of the conversion of Carver High School to Carver Military Academy, the Board changed the attendance-area boundaries for Fenger High School to include portions of Chicago in which the Altgeld Gardens housing project was located. The attendance-area boundaries define the geographic areas from which a school is required to admit resident students. The boundary change did not result in mandatory transfer of any students but, rather, entitled students within the new boundaries to enroll at Fenger High School.

¶ 8    Violence and fights occurred between students attending Fenger High School who were from the school neighborhood and students from the Altgeld Gardens neighborhood. Principal Elizabeth Dozier began her tenure at Fenger High School in September 2009 and learned of the rivalry between the "Ville gang" from the Fenger High School area and the "Gardens gang" from the Altgeld Gardens neighborhood. On several occasions she voiced concerns about that gang rivalry to the local police commander, Michael Kuemmeth, Chicago Police Chief Jody Weis, the Board's head of safety and security, Michael Shields, and her area officer, Donald Fraynd.

¶ 9    The morning of September 24, 2009, there was a shooting near Fenger High School between students of these rival neighborhoods. That same morning, there was also a fight at Fenger High School. Principal Dozier knew of the fight but, at her deposition, was not asked about whether she also knew of the shooting. No weapons were used in the school fight.

Principal Dozier testified she heard someone "screaming *** something with a particular gang–I can't recall which gang it was–a lot of cussing and, you know, threats of bodily harm." Principal Dozier testified that the threats indicated to her that the "fight wasn't over, that it would continue at some point in the future."

¶ 10     The fight was stopped by school security guards and a misconduct report was prepared by Dean Robert Spicer. The "Student Code of Conduct" was adopted by the Chicago board of education effective September 17, 2009, a week before the incident in this case. The deans at Fenger High School are responsible for student discipline and have the discretion to determine the appropriate consequences for violations of the Student Code of Conduct. The consequences for each kind of infraction depend, in part, on the age and grade level of the student and the severity of the conduct. The Board's Student Code of Conduct classifies a fight between two students, where no one is injured, as a Group 3 infraction. Fights involving more than two students, fights where someone is injured, incidents of battery without injury, and "acts of misconduct [that] include those student behaviors that very seriously disrupt the orderly educational process of the Chicago Public Schools" are classified as Group 4 infractions. The possible consequences for a Group 4 infraction include: disciplinary conferences involving the teacher, the student, a resource person and an administrator; in-school suspensions of 1 to 5 days; detentions; out-of-school suspensions of up to 10 days; disciplinary reassignment to another school; suspension of Chicago Public School Network privileges for up to 1 year; or balanced and restorative justice strategies.

¶ 11     Dean Spicer determined that the student who instigated the fight, Vashion Bullock, committed a Group 4 infraction and violated section 4-5 of the Student Code of Conduct, which prohibits "[b]attery or aiding or abetting in the commission of a battery which does not result in a physical injury" and is marked with two asterisks. The Student Code of Conduct states: "Inappropriate behaviors marked with two asterisks indicate that the school may use its discretion in notifying the police about the incident. Police notification is not required for these Inappropriate Behaviors." Dean Spicer suspended Bullock for four days and sent him home with his mother that day at 2 p.m. Dean Spicer determined this fight did not warrant calling the police. An exhibit to Principal Dozier's deposition indicates that another student, Fred Couch, was also disciplined for violating section 5-1 of the Student Code of Conduct.

¶ 12     Derrion was not a member of either group or gang that had been involved in the fight earlier that morning and was not involved in either the shooting off school grounds or the fight in school. That same afternoon on September 24, 2009, Derrion left Fenger High School and walked toward the Chicago Transit Authority (CTA) bus stop at 111th Street near Princeton Avenue to travel home but was unable to reach the bus stop because a fight broke out between teenagers in front of the Agape Community Center on 111th Street. Bullock was one of the students involved in this fight. Plaintiff's complaint does not allege that Couch was involved in the fight. During this fight, Derrion sustained significant physical injuries and subsequently died. Derrion was 16 years old.

¶ 13     After Derrion's death, the Board adopted a system-wide program called "Culture of Calm," which included a service called "Safe Passage." Safe Passage utilizes the services of community members who are trained and stationed along the major public sidewalks and transportation routes of high school students. The community members participating in Safe Passage wear yellow vests and use walkie-talkies and phones to report any incidents that arise

when students are going to or from their schools. They are not, however, permitted to intervene in any incidents they observe.

¶ 14 On October 22, 2009, plaintiff initiated this action by filing a civil action cover sheet and a verified petition for a protective order and discovery against the City of Chicago, not yet alleging any particular claims but instead seeking records relating to the fight in front of the Agape Community Center from the Chicago police department, the Chicago fire department, and the city's office of emergency management and communications.

¶ 15 After receiving police and 911 records from the city, plaintiff filed an eight-count first amended complaint on July 15, 2010, against the city and the Board. Plaintiff brought four counts each against both the city and the Board for wrongful death (740 ILCS 180/1 *et seq*. (West 2008)) and under the Survival Act (755 ILCS 5/27-6 (West 2008)), "Willful and Wanton–Wrongful Death," and "Willful and Wanton–Survival Act." In her first amended complaint, plaintiff alleged that the Board owed Derrion a special duty as an exception to the public duty rule and was willful and wanton in its conduct.

¶ 16 The city filed a motion to dismiss the first amended complaint on August 5, 2010, which was granted in an order entered on October 7, 2010.

¶ 17 The Board filed a combined motion under section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2010)) to dismiss the first amended complaint on October 1, 2010, arguing for dismissal under both section 2-619 (735 ILCS 5/2-619 (West 2010)) and section 2-615 (735 ILCS 5/2-615 (West 2010)). The court granted the Board's motion to dismiss the first amended complaint in a memorandum opinion and order entered December 13, 2010. The court addressed only the section 2-615 portion of the Board's motion and ruled that plaintiff failed to state a cause of action because under the public duty rule the Board did not owe plaintiff any duty and plaintiff failed to plead sufficient facts to establish the special duty exception to the public duty rule. The court also ruled that the amended complaint failed to state a cause of action against the Board because proximate cause was not properly pled and dismissed all counts against the Board. The court allowed plaintiff an opportunity to replead.

¶ 18 Plaintiff filed a second amended complaint on January 7, 2011, against only the Board, alleging four counts for wrongful death ("Willful and Wanton–Wrongful Death") and under the Survival Act ("Willful and Wanton–Survival Act"), specifically alleging the Board owed Derrion a special duty due to its action of transferring students to Fenger High School and that the Board owed a special duty to Derrion to detain students after the fight, stagger the dismissal times of the students, provide security personnel on the route from Fenger High School to the bus stop where Derrion was walking, provide safe passage for Derrion in his commute from Fenger High School, and provide transportation to Derrion from Fenger High School to his home. The Board filed a section 2-615 (735 ILCS 5/2-615 (West 2010)) motion to dismiss on January 24, 2011. Plaintiff maintained that she sufficiently pled the special duty doctrine and proximate cause. The court dismissed this complaint on April 11, 2012 in a written memorandum opinion and order, ruling that plaintiff again failed to state a cause of action because plaintiff failed to plead the elements of the special duty doctrine and proximate cause. The court stated that it appeared plaintiff would not be able to allege a special duty, but nevertheless again allowed plaintiff an opportunity to replead.

¶ 19 Plaintiff filed a third amended complaint on May 2, 2011, against the Board, alleging the same four counts for wrongful death and pursuant to the Survival Act ("Willful and Wanton–Wrongful Death" and "Willful and Wanton–Survival Act"). Plaintiff yet again

asserted the special duty doctrine. The Board filed a section 2-615 motion to dismiss the third amended complaint on May 23, 2011. The court granted the motion to dismiss, with prejudice, in a case management order on May 9, 2012, based on the failure to establish a special duty. Plaintiff did not appeal this order.[1] The court allowed plaintiff leave to amend her complaint "as to willful and wanton" conduct.

¶ 20    Plaintiff then filed a fourth amended complaint on May 30, 2012, which is the relevant complaint at issue on appeal, against the Board. Plaintiff brought only two counts against the Board, "Willful and Wanton–Wrongful Death," and "Willful and Wanton–Survival Act." Plaintiff alleged that certain members of the Board of Education, including Dean Spicer and principal Elizabeth Dozier, knew that there was a fight on September 24, 2009 at Fenger High School between students from the school neighborhood and students from the Altgeld Gardens neighborhood. Plaintiff also alleged that the Board knew that there was going to be another fight later that day on September 24, 2009 between the rival groups. Plaintiff further alleged that the Board "had control of the contact between [the] rival groups through disciplinary procedures like after[-]school detention" and acted willfully and wantonly by failing to detain after school the students involved in the fight at Fenger High School that day. Plaintiff alleged that the Board acted willfully and wantonly by failing "to control the rival groups by using [its] power to stagger dismissal times of students from school." The fourth amended complaint further alleged that the Board acted willfully and wantonly "by failing to provide security personnel on the route from Fenger [High School] *** to the bus stop where Derrion Albert was walking," "failing to provide safe passage for Derrion Albert in his commute from Fenger," "failing to provide transportation from Fenger *** to the bus stop that he was attempting to walk to," and "failing to provide transportation to Derrion Albert from Fenger *** to his home."

¶ 21    The Board answered this complaint and filed affirmative defenses based on sections 4-102, 2-201 and 3-108 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/4-102, 2-201, 3-108 (West 2008)). The Board filed a summary judgment motion based on these affirmative defenses on June 19, 2012. The circuit court granted summary judgment to the Board on plaintiff's fourth amended complaint on October 29, 2012, holding that the Board was immune from liability under section 4-102 of the Tort Immunity Act (745 ILCS 10/4-102 (West 2008)) and section 2-201 (745 ILCS 10/2-201 (West 2008)).

¶ 22    Plaintiff filed a notice of appeal on November 28, 2012, appealing the court's order of October 7, 2010, dismissing the city from her first amended complaint and appealing the order of October 29, 2012 granting summary judgment to the Board on her fourth amended complaint. Plaintiff subsequently filed a motion alleging that the City of Chicago was inadvertently included in the notice of appeal and requesting dismissal of the City of Chicago from this appeal. We granted plaintiff's motion and the only remaining defendant is the Board of Education of the City of Chicago. Thus, our review is only of the court's order of October 29, 2012, granting summary judgment to the Board on her fourth amended complaint on her claims based on willful and wanton conduct by the Board.

---

[1]The court did not include any language pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) in this order, nor did plaintiff request this language.

ANALYSIS

A summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2008). "The defendant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing ' "that there is an absence of evidence to support the nonmoving party's case." ' " *Siegel Development, LLC v. Peak Construction, LLC*, 2013 IL App (1st) 111973, ¶ 109 (quoting *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

In its summary judgment motion, the Board argued: (1) plaintiff's fourth amended complaint failed to state a cause of action because it did not allege any duty owed and a failure to provide safe passage does not state a cause of action; and (2) plaintiff's cause of action was defeated entirely by the Board's immunity under the affirmative defenses of sections 4-102 and 2-201 of the Tort Immunity Act (745 ILCS 10/4-102, 2-201 (West 2008)). The court's grant of summary judgment was based on both of these affirmative defenses, section 4-102 and section 2-201.

Summary judgment shall be rendered if the pleadings, depositions, and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2008). In considering an appeal from a grant of summary judgment, our review is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). See also *Pielet v. Pielet*, 2012 IL 112064, ¶ 30. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

## I. Section 2-202

The circuit court granted judgment in favor of the Board based on the affirmative defense of section 4-102 of the Tort Immunity Act, which provides blanket immunity for failure to provide police protection or service (745 ILCS 10/4-102 (West 2008)). Plaintiff first argues that the circuit court erred in determining that section 4-102 of the Tort Immunity Act applied to immunize the Board and argues that section 2-202 (745 ILCS 10/2-202 (West 2008)) (willful and wanton conduct in enforcing or executing a law) applied instead because the Board was enforcing the Student Code of Conduct adopted by the Board, which has the effect of a law. The Board argues that it has a complete defense to section 2-202 because the Board, as a public entity, is not a proper party that can be sued under this provision.

Our supreme court has emphasized that a court must first determine if any duty of care by the public entity exists before deciding whether the governmental unit or employee is immune from negligence liability based on willful and wanton acts or omissions. *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 490 (2001). "There can be no recovery in tort for negligence unless the defendant has breached a duty owed to the plaintiff." *Barnett v. Zion Park District*, 171 Ill. 2d 378, 386 (1996) (citing *Boyd v. Racine Currency Exchange, Inc.*, 56 Ill. 2d 95, 97 (1973), and *Barnes v. Washington*, 56 Ill. 2d 22, 26 (1973)). "[W]hether a local public entity owed a duty of care and whether that entity enjoyed immunity are separate issues." *Harris v. Thompson*, 2012 IL 112525, ¶ 17. Once a court determines that a duty is imposed on a local public entity by statute or common law, it then addresses whether any provision of the Tort Immunity Act applies to grant immunity from the claim. *Harris*, 2012 IL

112525, ¶ 17 (citing *Arteman v. Clinton Community Unit School District No. 15*, 198 Ill. 2d 475, 480 (2002), and *Village of Bloomingdale v. CDG Enterprises, Inc*., 196 Ill. 2d 484, 490 (2001)). If there is no duty owed by the defendant, it is axiomatic that a plaintiff cannot recover from a defendant. *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc*., 169 Ill. 2d 110, 116 (1995). If a duty is found, we are required to then rely upon the Tort Immunity Act to determine whether the entity in question is liable for breach of that duty. *Village of Bloomingdale*, 196 Ill. 2d at 490. We have recently reiterated that "we may only consider the issue of whether an immunity or defense is available to a governmental entity if we first determine that the entity owed a duty to the plaintiff." *McDonald v. Northeast Illinois Regional Commuter R.R. Corp*., 2013 IL App (1st) 102766-B, ¶ 28 (citing *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 46 (1998)). See *McDonald*, 2013 IL App (1st) 102766-B, ¶ 28 (declining to reach any issue of immunities under the Tort Immunity Act because no duty was owed to the plaintiff).

¶ 30    Thus, the very first step in an analysis of whether a tort immunity provision applies is whether any duty is even owed, and this first step in the analysis is required. Whether a duty on the part of a public entity exists is a question of law, which is reviewed *de novo*. *Vancura v. Katris*, 238 Ill. 2d 352, 373-74 (2010). Also, the interpretation of the Tort Immunity Act is a matter of law reviewed *de novo*. *Wilson v. City of Decatur*, 389 Ill. App. 3d 555, 558 (2009).

¶ 31    Section 2-202 of the Tort Immunity Act provides: "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202 (West 2008). The phrase "executing or enforcing of any law" contained in section 2-202 is not limited to law enforcement activities performed by police officers and the like but, instead, " 'clearly applies to *any and all public employees*, and any act or omission by them in the execution or enforcement of *any* law.' " (Emphases in original.) *Grandalski v. Lyons Township High School District 204*, 305 Ill. App. 3d 1, 7 (1999) (quoting *Arnolt v. City of Highland Park*, 52 Ill. 2d 27, 34 (1972)). Plaintiff is thus arguing that the Board owed Derrion a duty not to act willfully or wantonly in its execution or enforcement of the Student Code of Conduct and that it breached that duty.

¶ 32                     A. Proper Party Under Section 2-202
¶ 33    The Board entirely avoids answering the issue of whether a school code is a "law" under section 2-202 of the Tort Immunity Act and instead devoted a great portion of its argument on appeal to its contention that section 2-202 is inapplicable and that the Board cannot be sued under section 2-202 because the Board is not a proper party thereunder. The Board's argument is a section 2-619(a)(2) defense: the lack of "legal capacity to *** be sued." 735 ILCS 5/2-619(a)(2) (West 2010). This is a threshold issue and we need not reach the merits if plaintiff's section 2-202 claim is barred based on the Board's lack of legal capacity to be sued. We thus must first examine whether plaintiff's section 2-202 claim fails based on this legal defense. In doing so, we also clarify any confusion arising from our previous precedent.

¶ 34    The Board argues that it cannot be sued under section 2-202 in this case because section 2-202 only applies to individual public employees and, here, no individual public employee is named as a party defendant. This argument is without merit. The Tort Immunity Act provides for the assertion of individual immunity provisions, and their exceptions to immunity, by public entities derivatively under section 2-109 (745 ILCS 10/2-109 (West 2008)) where the

injuries are alleged to have been caused by the acts or omissions of the entity's employees. Section 2-109 clearly provides a vehicle for derivative immunity or liability of an entity based on whether the individual employee(s) is liable: "A local public entity is not liable for an injury *resulting from an act or omission of its employee where the employee is not liable*." (Emphasis added.) 745 ILCS 10/2-109 (West 2008). Section 2-202, in turn, provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202 (West 2008).

¶ 35    The Board cites to *Barnes v. Chicago Housing Authority*, 326 Ill. App. 3d 710, 719 (2001), *Anthony v. City of Chicago*, 382 Ill. App. 3d 983, 995-96 (2008), and *Ries v. City of Chicago*, 396 Ill. App. 3d 418, 435 (2009). The Board argues that *Barnes* and *Anthony* held that section 2-202 cannot apply where an individual public employee is not "named" in the suit and that *Ries* recognized the holdings in *Barnes* and *Anthony* as "settled law." Such an argument has been raised by litigants previously and our prior precedent has been less than clear on the issue. We clarify that these cases do not stand for any such general proposition.

¶ 36    In *Barnes*, the claim was for the entity's failure to supervise its employees, which is a direct institutional negligence claim only against the entity. *Barnes*, 326 Ill. App. 3d at 715-16. Such a claim is not based on an act or omission of any individual employee. See *Rasgaitis v. Waterstone Financial Group, Inc.*, 2013 IL App (2d) 111112, ¶ 57 ("In a claim for negligent supervision it is the employer's wrongful act rather than the employee's wrongful act that is at issue."). In *Anthony*, the wrongful omissions were also based on only the acts or omissions of the city itself and were not predicated on the acts or omissions of any individual city employees. *Anthony*, 382 Ill. App. 3d at 995-96. In *Ries*, the allegations against the city were based on the city's employee's acts or omissions, and the individual public employee was initially named as a defendant in the suit along with the city but the individual employee was dismissed before the case went to the jury. *Ries*, 396 Ill. App. 3d at 429. There was a determination that the individual employee was not liable, as the trial court granted the employee a directed verdict, and thus no individual employee was liable. *Ries*, 396 Ill. App. 3d at 426.

¶ 37    In *Melbourne Corp. v. City of Chicago*, 76 Ill. App. 3d 595 (1979), this court held that, through section 2-109 of the Tort Immunity Act, a public entity is afforded the individual immunities of its employees and "may assert any immunity granted an employee to preclude its own liability." *Melbourne Corp.*, 76 Ill. App. 3d at 604. See also *Sank v. Poole*, 231 Ill. App. 3d 780, 787-88 (1992). The reverse is also true; a public entity is not *relieved* of liability caused by its employees' willful and wanton acts simply because the employees are not named in the suit. See *McCottrell v. City of Chicago*, 135 Ill. App. 3d 517 (1985) (holding that the fact that individual paramedic employees whose alleged wanton and willful acts led to decedent's death were not also named as defendants did not relieve the city of liability for any willful and wanton acts of its employees). See also *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 117 (2008) (Illinois Supreme Court provided guidance in whether individual immunities apply to public entities via section 2-109 by drawing the distinction based on who is alleged to have actually caused the injury, the entity or the employees).

¶ 38    In this case, unlike *Barnes* and *Anthony*, plaintiff bases her claims on the omissions of the Board *through its employees*. Plaintiff brought her claims under the Wrongful Death Act and the Survival Act. Plaintiff alleges acts and omissions by individual Board employees, namely, Principal Dozier and Dean Spicer. Plaintiff specifically alleged in both counts against the

Board in her fourth amended complaint that the Board "*by and through its employees and/or agents*, acted willfully and wantonly." (Emphasis added.) Thus, contrary to the Board's argument, the Board *is* an appropriate party that can be sued under section 2-202 derivatively through section 2-109 of the Tort Immunity Act, since plaintiff alleges the injuries were a result of the Board's employees' acts and omissions. As such, we proceed to the merits of plaintiff's section 2-202 argument.

¶ 39                          B. The Board Was Not Executing or Enforcing Any Law

¶ 40       Plaintiff argues that section 2-202 applies to the facts of this case, and not section 4-102, because the Board, through the actions of Principal Dozier, Dean Spicer and unspecified Board employees, was executing or enforcing the Student Code of Conduct, which plaintiff argues has the force of law. The Board avoids squarely answering the question whether its Student Code of Conduct is a "law" within the meaning of section 2-202 of the Tort Immunity Act.

¶ 41       Plaintiff argues that "[t]he determination of whether an officer is executing or enforcing a law is a factual one which must be made in light of the circumstances in each case," citing to *Aikens v. Morris*, 145 Ill. 2d 273, 279 (1991) (citing *Arnolt v. City of Highland Park*, 52 Ill. 2d 27 (1972)). It is true that "[o]rdinarily, the determination of whether a public employee is enforcing a law is a question of fact that must be determined by the trier of fact in light of the circumstances in each case." *Pouk v. Village of Romeoville*, 405 Ill. App. 3d 194, 197 (2010) (citing *Lacey v. Village of Palatine*, 232 Ill. 2d 349, 367 (2009)). "However, a court may, as a matter of law, determine whether a public employee is enforcing a law when the facts alleged support only one conclusion." *Pouk*, 405 Ill. App. 3d at 197 (citing *Lacey*, 232 Ill. 2d at 367). See also *Simpson v. City of Chicago*, 233 Ill. App. 3d 791, 792 (1992) ("the question may be decided as a matter of law where the evidence is undisputed or susceptible to only one possible interpretation").

¶ 42       Regardless of how plaintiff attempts to couch the facts, here the facts can lead to only one conclusion: that the Board was not engaged in executing or enforcing *anything* at the time of the tragic incident leading to Derrion's death, including the student code. Alleging a *failur*e to act means section 2-202 is inapplicable. Plaintiff alleges that the Board *failed* to take certain actions, such as staggering dismissal times or ensuring Derrion's safety after school off school property on his commute home. According to the complaint, the Board was doing nothing at the time of Derrion's injuries. Such allegations can implicate section 4-102, but not section 2-202. "Section 4-102 immunity may apply in the context where police officers are simply 'providing [or failing to provide] police services,' but section 2-202 immunity requires more particular circumstances for its application, *i.e.*, an *act* or a *course of conduct* 'in the execution or enforcement' of law." (Emphases added.) *Aikens v. Morris*, 145 Ill. 2d 273, 282 (1991) (quoting Ill. Rev. Stat. 1979, ch. 85, ¶ 2-202). When a complaint "alleges that public employees were doing nothing at the time of an injury," or "where a plaintiff alleges that a public employee took some action to enforce a law but then stopped and an injury occurred thereafter," section 202 is inapplicable. *Pouk v. Village of Romeoville*, 405 Ill. App. 3d 194, 198 (2010) (citing *Bowler v. City of Chicago*, 376 Ill. App. 3d 208, 216-17 (2007), and *Anthony v. City of Chicago*, 382 Ill. App. 3d 983, 993 (2008)). Section 2-202 "provides immunity only where the public employee is negligent while *actually* engaged in the execution or enforcement of a law." (Emphasis in original.) *Barnett v. Zion Park District*, 171 Ill. 2d 378, 391 (1996) (citing *Arnolt v. City of Highland Park*, 52 Ill. 2d 27, 33 (1972)).

¶ 43    Moreover, even assuming for the sake of argument that the Board was enforcing the student code, we hold that student codes are not "laws" within the meaning of section 2-202. Plaintiff provides no authority for its contention that the student code is a "law." The Student Code of Conduct was adopted by the Chicago board of education effective September 17, 2009. Section 34-19 of the Illinois School Code provides that the bylaws, rules and regulations established by the Board "shall have the force of ordinances." 105 ILCS 5/34-19 (West 2008). See also *Jefferson v. Board of Education of the City of Chicago*, 82 Ill. App. 3d 877, 881 (1980). This provision applies to the Chicago board of education. 105 ILCS 5/34-19 (West 2008). "A municipal ordinance has the force of law over the community in which it is adopted and, within the corporate limits, operates as effectively as a law passed by the legislature." *City of Chicago v. Roman*, 184 Ill. 2d 504, 511 (1998) (citing *Hope v. City of Alton*, 214 Ill. 102, 105 (1905)).

¶ 44    But while a municipal ordinance has the force of law, student codes are not "laws" within the contemplation of section 2-202 of the Tort Immunity Act. This court has held that a similar provision in the Illinois School Code governing discipline, section 24-24, is not a "law" within the meaning of section 2-202 of the Tort Immunity Act. *Grandalski*, 305 Ill. App. 3d at 7. "While section 24-24 of the School Code can be characterized as a law and it does provide teachers with supervisory authority over students, it is not a law that is enforced in the sense contemplated by section 2-202." *Id.* The Board's Student Code of Conduct in the Chicago public school district regarding the imposition of student discipline is similarly not a "law" within the meaning of section 2-202 of the Tort Immunity Act. Section 2-202 does not apply.

¶ 45                                    II. Section 3-108 Failure to Supervise

¶ 46    Plaintiff also argues the court erred in finding that plaintiff failed to plead a willful and wanton failure to supervise under section 3-108 of the Tort Immunity Act. The Board responds that section 3-108 does not provide an exception to section 4-102 immunity. The court rejected plaintiff's argument that section 3-108 applied as an exception to the Board's immunity under section 4-102 and section 2-201.

¶ 47    Section 3-108 of the Tort Immunity Act provides as follows:

> "3-108. (a) Except as otherwise provided in this Act, neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury.
>
> (b) Except as otherwise provided in this Act, neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property unless the employee or the local public entity has a duty to provide supervision imposed by common law, statute, ordinance, code or regulation and the local public entity or public employee is guilty of willful and wanton conduct in its failure to provide supervision proximately causing such injury." 745 ILCS 10/3-108 (West 2008).

¶ 48    The legislature amended section 3-108 of the Tort Immunity Act in 1998 to add an exception for willful and wanton misconduct. Pub. Act 90-805, § 5 (eff. Dec. 2, 1998) (amending 745 ILCS 10/3-108 (West 1994)). See also *Barnes*, 326 Ill. App. 3d at 722-23 (noting the amendment).

¶ 49    Section 3-108 applies to injuries that occur on *any* public property, not merely on property owned by a governmental entity that has been sued. *Castenada v. Community School District Unit No. 200*, 226 Ill. App. 3d 514, 517 (1992). "The term 'supervision' includes coordination, direction, oversight, implementation, management, superintendence, and regulation." *Dixon v. Chicago Board of Education*, 304 Ill. App. 3d 744, 748 (1999) (citing *Longfellow v. Corey*, 286 Ill. App. 3d 366, 369-70 (1997)).

¶ 50    The incident in this case took place on a sidewalk near a bus stop, which is public property, but the Board neither undertook to supervise an activity at the time of the incident, nor did the Board have any duty under the common law, statute, ordinance, code, or regulation to supervise any activity at the time of this incident. The circuit court below held that the allegations in plaintiff's complaint "do not allege a failure to supervise an activity on school property as they essentially allege a failure to provide police protection" and that plaintiff's "attempt to characterize the Board's decision to impose one form of discipline over another as a failure to supervise an[ ] activity is without merit." We agree with the circuit court's determination. It is clear that the incident occurred after school, off school grounds, and was a fight started independently by other students, resulting in their own tortious conduct toward Derrion. The Board had no duty to supervise those individual students at that time. Section 3-108 is entirely inapplicable.

¶ 51                                    III. Section 4-102 Applies

¶ 52    Section 4-102 of the Tort Immunity Act immunizes local public entities for failure to: (1) establish a police department; (2) otherwise provide police protection; or, if police protection is provided, (3) failure to provide adequate police protection service. 745 ILCS 10/4-102 (West 2008). See also *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 510 (2006). Under the Tort Immunity Act, a "local public entity" includes school districts and all other local governmental bodies such as the Board. 745 ILCS 10/1-206 (West 2008).

¶ 53    Our supreme court has stated that "section 4-102 of the Tort Immunity Act codifies the *** common law rule that municipalities or their employees are not liable for failure to supply police or fire protection." *Aikens v. Morris*, 145 Ill. 2d 273, 278 n.1 (1991). See also *DeSmet*, 219 Ill. 2d at 508-09 ("[t]his court's comments in *Aikens* suggest *** that the public duty rule, at least in this context, has been incorporated into the Tort Immunity Act as an 'immunity' "). Under the common-law public duty rule, a public entity is under no duty and is not liable for its failure to provide adequate governmental services, such as police or fire protection. *Huey v. Town of Cicero*, 41 Ill. 2d 361, 363 (1968); *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 32 (1998). "The rationale for this rule was that the duty of a municipality to provide governmental services was owed to the public at large and therefore took precedence over any duty owed to a particular plaintiff." *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 345 (1998). This sovereign immunity under the public duty rule shields municipalities and their employees from liability when conducting customary duties toward the public at large. *Lawson v. City of Chicago*, 278 Ill. App. 3d 628, 634 (1996). Our supreme court has instructed that "functions traditionally performed by police, such as weapons detection, traffic control, and crowd security and control" are immunized under section 4-102. *Doe v. Chicago Board of Education*, 213 Ill. 2d 19, 26 (2004).

¶ 54    In granting judgment to the Board on the basis of section 4-102, the court first noted that plaintiff had "not identified any specific duty the Board breached" and commented that "some

duties implied by the allegations, such as duties to intervene in an altercation not on school property, to detain students after school, or to provide safe passage, do not exist." The court determined that the complaint alleged "what is essentially a failure to provide adequate police protection," and ruled that the Board was immune from liability under section 4-102 of the Tort Immunity Act.

¶ 55       We agree. The facts of this case fall squarely within the protection of immunity provided by section 4-102. In a case on point and similar to the case at bar, *Green v. Chicago Board of Education*, 407 Ill. App. 3d 721 (2011), this court found that the Board was completely immunized under section 4-102, and that neither section 2-202, nor section 3-108 applied. *Green*, 407 Ill. App. 3d at 729-30. In *Green*, the special administrator of a high school student's estate brought an action against the Board under the Wrongful Death Act and Survival Act for an incident in which a fellow student fatally shot the administrator's decedent after school. Similar to this case, the plaintiff in *Green* alleged that the Board knew of the "violent nature" of the school and the neighborhood, and that "tension existed between students from different neighborhoods and that the school was located in a territory disputed by rival gangs." *Green*, 407 Ill. App. 3d at 723. The plaintiff alleged that on the date of the incident, "[w]aiting outside the school 'were dozens of people armed with golf clubs and other weapons.' " *Id*. In an allegation even more unfavorable than the present case, the plaintiff in *Green* alleged that the "violent altercations occurred *on school property*" and that, "[i]n one of those altercations, [another student] fatally shot decedent." (Emphasis added.) *Green*, 407 Ill. App. 3d at 723-24. In further allegations very similar to the present case, the plaintiff alleged that "the Board had a special relationship with the decedent and that it had a duty to protect the decedent from reasonably foreseeable criminal activity of third parties and to guard against those criminal activities" and "that the Board breached its duty to decedent when it willfully and wantonly failed to provide adequate security; remove certain individuals from the premises; timely notify the police of the altercation; and provide safe ingress and egress to its students on its premises." *Green*, 407 Ill. App. 3d at 724. The plaintiff maintained that section 3-108 (failure to supervise) could apply, instead of the blanket immunity under section 4-102 for failure to provide police protection and services. This court rejected plaintiff's argument and held that the Board was immune under section 4-102 because the allegations were that the Board failed to provide police protection and services:

> "Green argues that dismissing students from school should be seen as a supervisory act under section 3-108 of the Act as opposed to a failure to provide police protection under section 4-102 of the Act. However, Green does not cite any authority supporting her position. Importantly, the facts, as she pled them in her second amended complaint, focus on *security and policing measures around the school*, not supervising an activity. She has not pled that the Board was supervising or failing to supervise an activity. The allegations in her complaint make clear that her contention is that the Board either failed to provide proper policing or failed to provide adequate policing. She does not show how *this incident that occurred after the students had been dismissed from the school day* can be considered an activity in which the school provided supervision, as opposed to a *failure to properly police the area*. Green does not plead any allegations that the school supervised the students after dismissing them, nor does she suggest that the school had a duty to supervise the students after dismissing them for the day." (Emphases added.) *Green*, 407 Ill. App. 3d at 728.

See also *Towner v. Board of Education of the City of Chicago*, 275 Ill. App. 3d 1024, 1032-33 (1995) (holding that a Board employee was not an "insurer" of the plaintiff's safety, even if the employee had knowledge that there would be a fight outside the school building in non-school related activities at the end of or after the school day).

¶ 56    This is precisely what plaintiff is alleging in this case, functions typically performed by police, just as in *Green*. The facts of this case are similar to *Green* and mandate the same result. Plaintiff alleged that the "Board of Education employees at Fenger High School knew that the above-mentioned fight could cause severe injury to any of its students, including Derrion Albert, who *might* be *in the vicinity of the fight*." (Emphases added.) The facts in this case are actually stronger in favor of the Board than in *Green*, because the fight that caused Derrion's injuries and death was entirely off school grounds. Plaintiff alleged that "the Board of Education had control of the contact between the rival student groups through disciplinary procedures like *after-school* detention." (Emphasis added.) Plaintiff also alleged that "the Board of Education willfully and wantonly, and with conscious disregard for the safety of Derrion Albert, and others, failed to control the rival groups *after school* by using their power to stagger dismissal times of students from the school." (Emphasis added.) Plaintiff further alleged that "the Board of Education acted willfully and wantonly, and with conscious disregard for the safety of Derrion Albert, and others, by *failing to provide security personnel on the route from Fenger High School to the bus stop* where Derrion Albert was walking," as well as "by failing to provide transportation to Derrion Albert from Fenger High School to his home." (Emphasis added.) Plaintiff's allegations clearly seek police-type protection, and under section 4-102, the Board simply has no duty to provide these types of police protection.

¶ 57    Despite the complete immunity in section 4-102, and despite repeated dismissals of her special duty exception claim and plaintiff's forfeiture of review of the dismissal of this claim in her prior third amended complaint by pleading over in filing another amended complaint and not appealing that dismissal (see *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 154 (1983)), plaintiff's fourth amended complaint still contains allegations of a special duty owed to Derrion under the special duty exception, and plaintiff continues to advance a special duty exception argument on appeal, which is an exception to the common-law public duty rule. For example, plaintiff argues: "[Plaintiff's] injuries were certainly *foreseeable* \*\*\*. Defendant had *specific knowledge* of recurring violence at and around Fenger High School between the two groups of students involved in the subsequent melee." (Emphases added.) Confusion as to whether the special duty exception can establish a cause of action despite immunities under the Tort Immunity Act is demonstrated by the complicated procedural history of this case and plaintiff's numerous amended complaints. We also note that plaintiff continues to attempt to allege a cause of action under the common-law special duty exception.

¶ 58    The "special duty doctrine arose as a judicially created exception to the nonliability principles of the public duty rule, and is applicable in certain limited instances where a governmental entity has assumed a special relationship to an individual 'so as to elevate that person's status to something more than just being a member of the public.' " *Zimmerman*, 183 Ill. 2d at 32-33 (quoting *Schaffrath v. Village of Buffalo Grove*, 160 Ill. App. 3d 999, 1003 (1987)). Our supreme court has in the past recognized that "the special duty exception could override both the common law public duty rule and any immunities provided by the Tort Immunity Act." *Hess v. Flores*, 408 Ill. App. 3d 631, 640 (2011). But in *Harinek*, our supreme

court unequivocally clarified that "the special duty doctrine may not operate to impose liability upon a public entity after a court has found that entity immune from liability under the Tort Immunity Act." *Harinek*, 181 Ill. 2d at 347. The supreme court subsequently reaffirmed this position in *Zimmerman*: "Because the special duty doctrine is a judicially created exception to the public duty rule, the special duty doctrine cannot, and was not intended to, contravene the immunities provided to governmental entities under the Tort Immunity Act." *Zimmerman*, 183 Ill. 2d at 46. No allegation of any special duty can defeat immunity under section 4-102.

¶ 59    Plaintiff also repeatedly alleged her claims against the Board for wrongful death and under the Survival Act as "Willful and Wanton–Wrongful Death," and "Willful and Wanton–Survival Act." But there is no exception for willful and wanton conduct in section 4-102. See 745 ILCS 10/4-102 (West 2008). In *In re Chicago Flood Litigation*, 176 Ill. 2d 179 (1997), the Illinois Supreme Court made clear that if a tort immunity provision does not contain an exception for willful and wanton misconduct, then no such exception exists. See *In re Chicago Flood Litigation*, 176 Ill. 2d at 196. Section 4-102 contains no "willful and wanton" exception and thus provides blanket immunity and immunizes all misconduct, whether it is alleged to be willful and wanton or merely negligent.

¶ 60    Thus, under section 4-102, there is no duty, and section 4-102 provides absolute immunity, with no exceptions. "[W]hen the applicable provisions of the Tort Immunity Act provide absolute immunity, the plaintiff's claim is barred." *Moore v. Green*, 219 Ill. 2d 470, 478 (2006). Section 4-102 simply has *no* exceptions. Where it applies, as in this case, immunity to the public entity is absolute.

¶ 61                                    IV. Section 2-201

¶ 62    Finally, plaintiff argues that the court erred in finding the Board was also immune under section 2-201 of the Tort Immunity Act. Section 2-201 of the Tort Immunity Act provides that: "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting [from such discretion] even though abused." 745 ILCS 10/2-201 (West 2008). The court ruled that the Board was also immune under section 2-201 of the Tort Immunity Act with respect to its administration of the Student Code of Conduct.

¶ 63    The circuit court held as follows:

"The Board here is also immune from liability pursuant to section 2-201 of the Act, which affords immunity from liability for injuries resulting from an act or omission in the determination of policy or the exercise of discretion. The act and omissions alleged on the part of the Board here involve decisions with regard to administering student discipline and punishment involve the determination of policy and an exercise of discretion. The Board here had to balance competing interests and make a judgment call, thus engaging in policy determination. Further, the Student Code of Conduct provided the Board with various options based on relative factors with regard to deciding the appropriate punishment, thus, it had broad discretion in disciplinary matters."

¶ 64    The circuit court's reasoning and holding are entirely correct on this issue.

¶ 65    Plaintiff maintains that the Board is not entitled to this immunity because the principal's action was not discretionary but, rather, was a ministerial act and "the Board failed to institute

- 15 -

a proper mandated action plan given the seriousness of the fight." Plaintiff argues that the Board should have categorized the fight at school earlier that day as more serious and called the police, but plaintiff offers no authority for this argument. Plaintiff cites to no authority for this proposition. Plaintiff relies only on the student code, which only provides descriptions for categories of student misbehavior and the corresponding discipline, which is discretionary. Plaintiff does not explain how determining the severity of student misconduct is anything but a discretionary decision.

¶ 66 We also note that plaintiff failed to plead or argue proximate cause on this issue. Plaintiff does not explain how calling the police for the fight in school earlier that day would have prevented the fight later that day, after school and off school grounds.

¶ 67 "Municipal corporations will not be held liable in damages for the manner in which they exercise, in good faith, their discretionary powers of a public, or legislative, or quasi judicial character." (Internal quotation marks omitted.) *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 193 (1997). The Board cites to section 34-19 of the Illinois School Code, which specifically affords discretion to school administrators in matters of student discipline. 105 ILCS 5/34-19 (West 2008).

¶ 68 We hold Dean Spicer's decision to suspend, rather than detain, the aggressor in the fight at Fenger High School earlier on the day of the incident was a disciplinary decision and therefore discretionary. The Board asserted this immunity under section 2-201 by virtue of section 2-109 of the Tort Immunity Act. 745 ILCS 10/2-109 (West 2008). We conclude that the Board is immune from any liability from Dean Spicer's (and any other Board employees') discretionary disciplinary decisions. See *Arteman v. Clinton Community Unit School District No. 15*, 198 Ill. 2d 475, 484 (2002) (school district is immune from any liability arising from its employees' exercise of discretion).

¶ 69                                         CONCLUSION

¶ 70 Plaintiff attempts to defeat the applicability of section 4-102 to the facts of this case by arguing that either section 2-202 or section 3-108 of the Tort Immunity Act applies instead, but we find plaintiff's arguments unpersuasive. Section 2-202 of the Tort Immunity Act is inapplicable because the Board was not executing or enforcing a law at the time of the incident. Section 3-108 of the Tort Immunity Act is also inapplicable to plaintiff's claim because the Board was not supervising any school activity at the time of the incident. Rather, plaintiff's complaint alleges that the Board failed to provide protection and services in the nature of police protection and services, which is specifically immunized under section 4-102. We conclude that the Board had no duty to plaintiff's decedent under the common-law public duty rule and is immune from suit in this case pursuant to section 4-102 of the Tort Immunity Act. We further conclude that the Board is also immunized for its discretionary disciplinary decisions under section 2-201 of the Tort Immunity Act. The Board is entitled to raise this immunity by virtue of section 2-109 of the Tort Immunity Act.

¶ 71 Although the circumstances of this case are tragic, the Board is not liable for the tortious acts of third parties and has no duty to provide police-type protection to students after school hours, off school grounds, and when there is no school-supervised activity taking place. Section 4-102's complete immunity in this context is well established.

¶ 72    Affirmed.

¶ 73    JUSTICE MASON, joined by Justice Hyman, specially concurring.

¶ 74    I agree that the circuit court's order granting summary judgment to the Board should be affirmed for the reasons articulated in section III (*supra* ¶¶ 51-60) of the opinion. I see no reason to depart from the decision in *Green v. Chicago Board of Education*, 407 Ill. App. 3d 721 (2011), and agree that section 4-102 of the Tort Immunity Act (745 ILCS 10/4-102 (West 2008)) operates to immunize the Board's alleged conduct. The remaining issues discussed are unnecessary to the disposition of this appeal and, therefore, I express no views on those issues.